## John S. Bagg v. George Jerome and Another.

Where a contract in violation of law has been carried into effect, the law will not aid either party to undo what has been done, and to divest a title that has passed.

A mortgage of intoxicating drinks under which possession has been taken by the mortgagee, can not be treated as void under the Prohibitory Liquor Law of 1855, as between the mortgagor and mortgagee, nor as between the latter and the creditors of the former, unless made to defraud such creditors.

Where a chattel mortgage contains no unlawful provisions, it can only be avoided by proof of fraud in fact, which is exclusively a question for the jury. If it were void on its face, it would be the duty of the court to pronounce it so; but the court can not look at facts outside the instrument, and treat them, when found by the jury, as a part of the instrument itself, or instruct the jury if they find such facts, that the mortgage is void; since to do so would be a mere evasion of the statute which refers the question of fraud to the jury.

That a chattel mortgage is given to a trustee to secure demands in favor of several creditors, instead of being given to the creditors themselves, and that it contains a provision that the trustee shall be liable in the premises for his own default or neglect only, are matters the jury may take into account in determining the question of actual fraud, but they do not render the instrument fraudulent in law.

*Heard July 7th and 8th. Decided October 12th.*

Error to Wayne Circuit.

George Jerome and Robert P. Toms, brought replevin against Bagg in the court below, for a stock of liquors. Defendant pleaded the general issue, and gave notice in justification that he took the liquors under an execution against one Lewis M. Bayless, whose property he alleged them to be.

On the trial before a jury, plaintiffs called Bayless as a witness, who testified that he was the person mentioned in, and who executed "Exhibit A," a copy of which is given below; that the amounts therein mentioned as secured were compromise amounts, and that said plaintiffs requested possession of the goods named in said Exhibit, and that witness gave them possession; that they appointed him their agent, directed him to sell for cash, and deposit proceeds in bank to their credit; which he had done.

Upon cross-examination said Bayless testified that at the time of the execution of said Exhibit he was indebted to

the amount of about $13,000, and was insolvent; that his heaviest creditors had proposed to compromise at twenty-five cents on the dollar, and had circulated a paper to see if all the creditors would agree to such a compromise, upon being secured by endorsed paper, and that he had been anxious that such endeavor should succeed; that his assets consisted solely of the property covered by said instrument, amounting to upwards of $4,000; that the stock itself was worth from $3,500 to $3,800; and the fixtures about $700; that said stock consisted mainly of liquors spirituous and intoxicating; that on the evening of the day of the execution of said Exhibit, being Saturday, or on the evening of the Monday or Tuesday thereafter, said plaintiffs came into his store, and said they wanted possession of said stock; that witness replied "There it is"; and that thereupon they requested witness to remain in charge of the property, and sell, by retail, for cash, until he should receive different orders; that plaintiffs were in the store but a few minutes; that the levy under which defendant justified was made on the Thursday following, and that up to that time witness had made no deposit to the account of plaintiffs; that the name of witness still remained on a sign over the store door, and that no external appearances indicated any change of ownership or possession of said goods; that sales were not as before, being after this only for cash; that witness had talked about making an assignment, provided his creditors did not make a compromise with him, and had been advised so to do.

Upon re-direct examination, said witness testified that the assignment was thought of only to secure an equal division of his property among his creditors, and to prevent its being all seized by some one creditor; that only abou-$2,000 of debts were left unprovided for by said instrument, and that all of the debts provided for therein were originally contracted out of this state; and all but two of them were contracted for spirituous liquors sold to witness in the

states of New York, Pennsylvania, and Ohio, and that the said creditors lived in those states.

The said plaintiffs then proved the execution of said "Exhibit A" by G. V. N. Lothrop, Esq., and the filing thereof with the city clerk; and offered said Exhibit in evidence. But to its admission said defendant objected, upon the ground that it did not tend to show title to the property replevied in the plaintiffs, being void under the act of the state of Michigan, approved February 3d, 1855, entitled "An Act to prevent the Manufacture and Sale of spirituous and intoxicating Liquors as a Beverage." The court overruled the objection, and admitted the said instrument; and defendant excepted.

The plaintiffs then rested their case.

The defendant having proved that he took the property as alleged in his notice, also rested, and requested said court to charge the jury as follows:

1: That the instrument in controversy is void under the said act of February 3d, 1855, and gives the plaintiffs no title or right of possession as against creditors and others.

2: If the jury find that the instrument in question covered *all the property* of Bayless; that he was to his own knowledge insolvent, and that he had creditors *not provided for* in said instrument, then that said instrument is fraudulent as against creditors, and void.

3: That said instrument is fraudulent and void as against creditors, by reason of the clause exempting the rustees from all liability except for personal fault and neglect.

4: That said instrument is fraudulent and void as against creditors, if the jury shall find that there was no actual and visible change of possession from Bayless to the plaintiffs.

5: That said instrument is fraudulent and void as to creditors, because on its face a *resulting trust* is, by legal implication, raised for the vendor, Bayless.

The court refused so to charge, but on the contrary charged that said instrument was a chattel mortgage, and

its filing notice to everybody; that it was not an assignment on its face, and that the testimony of Bayless, if the jury should believe it, did not show it to be such in law; that the only question for the jury was the good faith of the transaction; and if they should find that said instrument was executed with no fraudulent intent, they must find for the plaintiffs; otherwise for the defendant.— To this charge defendant excepted.

The jury returned a verdict for plaintiffs.

The following is a copy of said *Exhibit "A"*:

"Whereas, Lewis M. Bayless, of the city of Detroit, Wayne County, Michigan, is, by a settlement made and bearing date this tenth day of September, indebted to several mercantile firms, as follows, to wit: To Mitchell L. Allen, in the sum of eleven hundred and eighty-one 91-100ths dollars, payable with interest in three equal instalments, at eight, ten, and twelve months respectively, from date; to Joseph Barton, in the sum of two hundred and seventy-four 9-100ths dollars, payable with interest at nine months from date; to S. R. Kellogg & Co., in the sum of five hundred and twenty-eight 19-100ths dollars, payable with interest in three equal instalments, at six, nine, and twelve months respectively; to L. Myers & Co., in the sum of one hundred and eighty 52-100ths dollars, payable with interest at six months after date; to C. T. Martin, in the sum of two hundred and seventy-nine 66-100ths dollars, payable in two equal instalments, at ten and twelve months respectively, with interest; to Boyle & Co., in the sum of one hundred and fifty-nine 26-100ths dollars, payable at nine months from date, with interest; to A. D. Dickinson, in the sum of one hundred and twenty 94-100ths dollars, payable at six months from date, with interest; and whereas, the said Bayless has agreed to secure the said indebtness by a chattel mortgage, to be by him executed upon his entire stock of goods, wares, and merchandise, to such persons as shall,

by said creditors, be agreed upon to receive said mortgage, as trustees in their behalf; and whereas the said creditors have nominated Robert P. Toms and George Jerome, Esquires, to act as said trustees, and they having consented so to act (it being, however, expressly understood that said trustees shall not be liable in the premises for any thing except their own personal default and neglect), Now, therefore,

"This Indenture, made the tenth day of September, in the year of our Lord one thousand eight hundred and fifty-eight, between Lewis M. Bayless, of said city of Detroit, of the one part, and Robert P. Toms and George Jerome, Esquires, of the other part, witnesseth, that the said party of the first part, for and in consideration of the sum of one dollar, to him in hand paid by the said parties of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, doth grant, bargain and sell unto the said parties of the second part, all and singular the goods and chattels hereinafter mentioned, that is to say: All of the goods, wares and merchandise now constituting his stock in trade at his store on Jefferson avenue, in said city, and being more particularly set forth in the schedule marked "A" hereunto annnexed: To have and to hold all and singular the said goods and chattels hereinbefore granted, bargained, and sold, or mentioned, or intended to be, unto the said parties of the second part for ever; said goods and chattels now remaining and continuing in the possession of the said party of the first part, in said Detroit:

Provided always, and these presents are upon this *Express Condition*, that if the said party of the first part shall and do well and truly pay, or cause to be paid, to the said parties of the second part, the sums of money, with interest thereon, as above set forth, as the same shall severally fall due (it being, however, understood that all money received hereunder by said trustees shall be by them held to be

divided and applied among the several creditors *pro rata,* so that they shall all stand upon equal footing as to the security), then these presents and every matter herein contained, shall cease and be null and void. But in case default shall be made in payment of the said sum of money above mentioned, or the interest thereon, or any part thereof, at the time above limited for the payment of the same, or if the said party of the first part shall sell, assign, or dispose of, or attempt to sell, assign, or dispose of, the whole or any part of the said goods and chattels, or remove, or attempt to remove the whole or any part thereof, from the said city of Detroit without the written assent of the parties of the second part, then and from thenceforth it shall and may be lawful for the said parties of the second part, their executors, administrators, or assigns, or his, her, or their authorized agent, to enter upon the premises of the said party of the first part, or any place or places where the said goods and chattels, or any part thereof, may be, and take possession thereof, and to sell and dispose of the same for the best price or prices that can be obtained therefor, at public vendue, giving six days notice of the said sale, by a written or printed notice, to be posted at one or more public place or places in the said town, and out of the money to arise by such sale thereof, to pay and retain the said sum of money above mentioned, and the interest thereon, and all charges of such sale (if so much there shall be), rendering the surplus moneys (if any there shall be) to the said party of the first part.

In witness whereof, the party of the first part has hereunto set his hand and seal, the day and year first above written.

(Witness)                    (Signed)

GEO. V. N. LOTHROP.          L. M. BAYLESS, [L. S.]"

*Walker & Russell,* and *C. I. Walker,* for plaintiff in error:

1. The conveyance under which plaintiffs below claimed

is void, and conveys no rights, because it is a sale of spirituous and intoxicating liquors, in direct violation of the prohibitory and penal sections one and two of the act of 1855. Whether this conveyance is a mortgage or an assignment, it is still a *sale;* for a mortgage of chattels is a conditional sale, and passes the property absolutely, subject only to the condition.—2 *Mich.* 111; 6 *Duer,* 99.

2. The conveyance in question is, in its nature and true effect, *an assignment in trust,* by an insolvent debtor, of all his property, for the *benefit of creditors.*

The conveyance is in the *form* of a chattel mortgage, but we submit that, in reality, it is an assignment by an insolvent debtor, in trust for creditors, and is to be governed by rules applicable thereto.

1st. It is a conveyance by an insolvent debtor, *conscious of his utter insolvency:* 2d. It is of *all* his property: 3d. It is in trust for the benefit of creditors *other than the trustees,* and to secure the payment of the debt of such other creditors: 4th. It involves a resulting trust to the grantor.

The only matter in which it differs from an ordinary assignment is, that an assignment is an *absolute* transfer of property, while a mortgage is only a *conditional* one. This difference, especially in relation to personal property, is technical and shadowy in the extreme.

By a chattel mortgage, the legal title to the property absolutely passes to the mortgagee, subject only to a condition; and the mortgagor, though actually in possession thereof, has no attachable interest therein.—2 *Mich.* 111; 4 *Ibid.* 295; 6 *Duer,* 99; 1 *Comst.* 295.

The resemblance between mortgages and assignments in trust for the benefit of creditors, has often been noticed.— 2 *Jones Eq.* 159; 17 *B. Monr.* 549; 6 *McLean,* 302.

They are both often made by an insolvent debtor—and of all his property, and to secure a preference to some one or more creditors—and their general purpose is often the same, *i. e.* to secure the payment of antecedent debts.

BAGG *v.* JEROME.

And, consequently, there has often been a confounding of the forms of the two instruments, and courts have frequently held conveyances in the *form* of mortgages to be assignments, and those in the *form* of assignments to be mere mortgages. There are other cases where the conveyance so partakes of the nature of both instruments, that it is difficult to give it a distinctive character, and it is treated as an assignment *and* mortgage.—2 *Johns. Ch.* 313; 6 *Humph.* 99.

The great and radical distinction between the two—when made by an insolvent debtor of all his property, to secure antecedent debts and give a preference—is, that the one is a conveyance in trust, the other *directly to the creditors.*

The following cases will illustrate the condition of the law as to these different conveyances.—16 *Ohio,* 469, 478; 15 *N. Y.* 143, 205; 1 *Seld.* 257; 18 *How.* 149; 4 *Clarke* (*Iowa*), 483; 1 *Rand.* 306; 7 *Wend.* 248; 26 *Vt.* 462; 23 *Pick.* 452; 10 *Conn.* 280; 8 *Ohio,* 390; 1 *O. S. R.* 239; *Ibid.* 45; 24 *Pa. S. R.* 432; 2 *Whart.* 240; 4 *Comst.* 216; 26 *Vt.* 462; *Ibid.* 686; 2 *Dutch.* 34; 8 *Ohio,* 390; 4 *O. S. R.* 603.

3. If we are right in this, then it will hardly be contended that we were not entitled to the charge of the court, as requested in our second request. An assignment in trust, by an insolvent debtor, of all his property, providing only for *a portion* of his creditors, is void, whether the resulting trust to the debtor is expressed, as in this case, or only implied; and irrespective of the value of the property assigned.—2 *Mich.* 445; 2 *Comst.* 365; 15 *N. Y.* 132, 208; 16 *Ibid.* 484.

4. The provision exempting the trustees from liability, except for "personal default or neglect," is either inoperative, or it makes the instrument void. We submit that it releases them from · liabilities that would otherwise rest upon them; although upon this point there is ground

for difference of opinion.— 1 *Sandf. Ch.* 6 ; 1 *Wis.* 305 *Ibid.* 125.

5. We were clearly entitled to our third request to charge. If this conveyance is an assignment for the benefit of creditors, then, clearly, to make it valid against attaching creditors, an actual change of possession is necessary. The assignees acted upon this hypothesis, and pretended to take possession. We were entitled to go to the jury on the fact whether they had so taken possession.

*G. V. N. Lothrop*, for defendants in error:

1. The object of the statute was to prevent the traffic in intoxicating liquors *in this State.* The law has no extra territorial operation. Hence, contracts of sale made in other states, and valid there, are held valid here, and are enforced in our courts.

Property in liquors is not destroyed, or intended to be, by the prohibitory law. The right to traffic in it as a beverage is alone restrained. — *People v. Gallagher*, 4 *Mich.* 245, 247.

Now, it fully appears that the consideration of the mortgage in question was in no part any prohibited sale of liquors. The consideration was made up of debts contracted in other states, with citizens of other states, and of unquestioned validity. And such debts the mortgagor might secure by a mortgage on his property of this kind.

The mortgagee, indeed, could not sell the mortgaged property as a beverage. But he might use it himself in any way; he might remove it from the state ; or he might, I presume, sell it to the class of persons authorized to vend liquors under the statute.

But be this as it may, the disposition which the mortgagee can make of it when he shall become the owner of the property, can not affect his right to take a security upon it for a valid debt. This is a distinct substantive right, falling neither within the letter nor spirit of the statute.

But it appears that not only was the property mortgaged, but the mortgagees actually took possession and changed the relation of Bayless from that of owner to that of agent for them. As the transaction is established to have been *bona fide*, and on a valid consideration, this change of possession is valid, not only between the mortgagor and mortgagees, but also as to all the world.— *Weld v. Cutler*, 2 *Gray*, 195; *Rowley v. Rice*, 11 *Metc.* 333.

2. The second proposition of the plaintiff in error is an attempt to convert, by legal construction, an instrument made for a valuable consideration and in good faith, and in form and intent a mortgage, into a *technical assignment* for the benefit of creditors, because the mortgagor was insolvent, and the instrument embraced all his property.

This proposition entirely ignores the distinctive qualities of the two instruments. It ignores the fact that the object and effect of the one is simply to give a *lien* upon property to *secure* a debt; that the effect and object of the other is absolutely to transfer the *title* of the property on a trust to sell and convert into money, and apply it *in payment* of debts. The primary design of the one is *security;* the primary design of the other is the application or reduction of property to *payment.*— 13 *N. H.* 298; 2 *Metc.* 99; 4 *Watts & Serg.* 383; 7 *Watts & Serg.* 343; 10 *Paige*, 445; 4 *Comst.* 211; 15 *N. Y.* 204, 208.

3. If the instrument is a mortgage, there can be no doubt but the parties might fully stipulate as to the responsibility of the trustees. And, indeed, were this an assignment, I apprehend that a stipulation of this kind would not affect it.

4. The fourth instruction asked assumes that the filing of a mortgage is of no effect, and that a want of change of possession is absolutely a fraud in law.

5. The fifth instruction asked for is obviously on the idea that the mortgage is to be construed into an assignment; for every mortgage has just as much a resulting

trust in favor of the mortgagor as has this one. And no instrument is ever avoided for a quality which the law inseparably imparts to it.—*Curtis v. Leavitt*, 17 *Barb.* 316; *Dow v. Platner*, 16 *N. Y.* 562.

6. The court, in its charge, properly submitted the whole question of fraud or fraudulent intent to the jury.

*Walker* in reply:

Though the title to the Prohibitory Liquor Law is "An Act to prohibit the sale of Intoxicating Drinks as a *beverage*," the act itself is aimed, not solely at sales made for the purposes of a beverage, but against sales generally.

CAMPBELL J.: Under the Constitution are not the general terms of the act restrained by the object expressed in the title?

*Walker*: Perhaps so, though practically the Legislature has treated this provision of the Constitution as directory merely. But the Legislature understood very well that to accomplish the object of preventing the sale of liquors as a beverage, it would not do to prohibit those sales merely which were made with the formed or expressed purpose of using the liquor as a beverage. The prohibition must be general, and they have made it so with certain specified exceptions.

The counsel inquires whether a druggist who has given bond may not buy for the purposes of sale. Practically there can be no difficulty in this respect, for the manufacture in the state being prohibited, purchases must be made elsewhere. But if there were a real difficulty, only the Legislature could remedy it.

MANNING J.: Can one who has sold and delivered liquors, immediately turn round and recover them back?

*Walker*: No; both being *particeps criminis*, the law leaves them where they are.

MANNING J.: Then, how can a creditor step in and claim that the title is still in the vendor—no intent to defraud creditors being alleged?

*Walker*: That question is not here, for plaintiffs rely, not upon possession, but upon this paper as proof of title.

CAMPBELL J.: Would it make any difference if the mortgage contained a provision that on default the mortgagee might take possession and sell out of the state?

*Walker*: I think not, because the sale itself is completed by the mortgage. The mortgage transfers the title, and is, therefore, within the letter of the law. It is within the spirit of the law also, for it would be the easiest matter in the world to evade the law if the principle be established that a mortgage of liquors is good.

We do not say that these parties might not have rested upon possession, and driven us to show title. They have seen fit to rely upon this paper: the question now is simply whether this paper is valid. We were in possession when suit was brought, and they attempt to prove title; not to show possession. Whether our levy was good is of no importance. If they had relied upon possession, and proved such possession as they were willing to rest upon, we might have been compelled to show a justification. But the case did not reach that point.

As to the other question, my position is that where an insolvent debtor, conscious of his insolvency, mortgages all his property in trust for the benefit of creditors, it is, *in fact*, an assignment in trust, whatever may be the form of the instrument, or by whatever name it may be called.—18 *Ill.* 396.

MANNING J.:

The first section of the act provides that no person shall be allowed to manufacture or sell any spirituous or intoxicating liquors. The second section declares all payments for such liquors shall be considered as having been received without consideration, and against law and equity; and that any money or thing paid therefor may be recovered back by the person paying the same, his wife, or any of his children; and

makes null and void, except as to *bona fide* purchasers without notice, all sales, transfers, grants, releases, quit-claims, surrenders, mortgages, &c., the consideration whereof, in whole or in part, shall have been the sale or agreement to sell such liquors.

At common law all contracts in violation of law are void. The law, in such cases, will not aid either party, but leaves them to reap the reward of their own folly. Hence, if the contract is executory it will not enforce it, or give damages for a non-performance; and if executed, it will not undo what the parties themselves have done, by divesting the title that has passed. By the chattel mortgage and delivery the title to the property passed from Bayless to the defendants. It is good against Bayless; and also against his creditors, if not made for the purpose of defrauding them. The statute provides for a recovery by the vendee, his wife, or any of his children, of the money or other thing given by him in consideration of the liquors, but it makes no provision whatever in behalf of the vendor, or his creditors, but leaves the seller of the liquors as at common law. See *Breck v. Adams,* 3 *Gray,* 569.

The only other question in the case was one of fraud, to be found by the jury. All conveyances made to hinder, delay, or defraud creditors, are void as to them, both at common law and under the statute. The statute, however, has changed the common law in one very important particular, and that is, in declaring the question of fraudulent intent in all such cases, to be a question of fact, and not of law.— *Comp. L.* 948 §3201. Before the statute the question of fraudulent intent—the facts being found by a jury—was one of law to be pronounced by the court. It is now, under the statute, a question of fact, to be found, like other facts, by the jury. Whether this change be a salutary one or not, is not for us to say; it is sufficient that it is made the law of the land by statute. When the instrument, on its face, is one the law will not sanction against creditors, it is the duty of

the court to pronounce it fraudulent as to them; but the court can not look to matters *dehors* the instrument for that purpose. In such case the fraud, if any, does not consist in the instrument itself, but in the abuse of it; or, in other words, in a party's seeking to use it for purposes at variance with what the instrument declares on its face. For the court to treat such extraneous matters, when found by a jury, as a part of the instrument itself, or to instruct the jury that the conveyance is void, if they should find them, would, it seems to us, be nothing more or less than an ingenious device to evade or get around the statute.—See *Jackson v. Dean*, 1 *Doug. Mich.* 519; *Oliver v. Eaton, ante p.* 108.

The mortgage is an ordinary chattel mortgage with two exceptions. It is given to the defendants in error instead of the creditors of Bayless, who are mentioned, with the amount Bayless was owing each one of them, in the recital. And it contains a provision that the defendants in error "shall not be liable in the premises for anything except their own personal default and neglect."

These were matters proper for the jury to take into consideration, with the other evidence in the case, but we see nothing in them rendering the mortgage fraudulent. We are inclined to the opinion that the last clause does not lessen the liability of the defendants in error, as trustees.

The judgment must be affirmed with costs.

The other Justices concurred.