CARLOS E. WARNER v. LOUIS B. LITTLEFIELD.

*Fraudulent conveyances—Chattel mortgage—Assignment for benefit of creditors—Trust—Evidence.*

1. The court erred in not submitting to the jury the questions of the existence, the extent, and good faith of the indebtedness named in the chattel mortgage under which plaintiff claimed, and whether the facts and circumstances attending the transaction had any tendency to substantiate the claim of the defendant that the mortgage was executed with intent to hinder, delay, and defraud the creditors of the mortgagor, for which error the judgment is reversed.

2. Expressions have crept into some decisions to the effect that if the property is conveyed *in trust* the instrument is thereby changed from a chattel mortgage to an assignment for the benefit of creditors; but such is not the law, unless the conveyance is *absolute,* and places the title of the property in the trustee.

3. The fact that the mortgagee is not a creditor of the mortgagor, and that the mortgage is executed in trust to secure certain specified creditors the amount of their several claims, does not tend in the remotest degree to give the instrument the character of a common-law assignment; citing *Bagg v. Jerome,* 7 Mich. 145; *Adams v. Niemann,* 46 Id. 136; *Walker v. White,* 60 Id. 427; *Lyon v. Ballentine,* 63 Id. 97.

4. A debtor, although insolvent, may secure a creditor for the payment of a pre-existing debt by a mortgage upon all of his

property, although he may have numerous creditors who are unsecured; citing *Sheldon v. Mann*, 85 Mich. 265, and cases there cited.

5. The fact that the value of the property greatly exceeds the debt secured may be considered as having a bearing upon the validity of the mortgage, as having been given to defeat, delay, and defraud creditors; but it will not change the character of the instrument to a common-law assignment, and be therefore void in law.

6. Neither the fact of the debtor's insolvency, nor the knowledge on the part of the mortgagee of such fact, will defeat or impair a mortgage security taken for an honest debt.

7. It has been supposed that *Kendall v. Bishop*, 76 Mich. 634, lends support to the idea that a chattel mortgage is an assignment if its effect "is to put the entire assets, legal and equitable, into the hands of a trustee for sale and distribution;" but Mr. Justice CAMPBELL laid down no such doctrine in that case, as he was speaking of an instrument which transferred the legal title absolutely to a trustee for sale and distribution.[1]

8. There ought to be and there is some underlying principle from which to determine whether an instrument is a chattel mortgage or a common-law assignment.   If the instrument is a conveyance upon condition, given as a security for a pre-existing debt, and contains no trust in its body whereby the property is withdrawn from the right of the mortgagor or others to redeem, who ordinarily have such right in cases of chattel mortgages, or whereby the title of the property is placed beyond the reach of execution as to any surplus, then the instrument is a chattel mortgage; but if it conveys the absolute title to a trustee for the benefit of creditors, and thus places the property and surplus beyond the reach of creditors, it is a common-law assignment.

9. The question whether the instrument is a chattel mortgage or an assignment for the benefit of creditors must in all cases be determined as a question of law upon the contents of such instrument, and not upon any outside testimony; and, unless the conveyance *upon its face* purports to convey *all* of the debtor's property to secure certain preferred creditors by an absolute title, the court is not at liberty to declare it a common-law assignment; and if facts appear outside of the instrument which tend to prove that it was executed with the intent that it should have the effect of such an assignment, or with

---

[1] See *Gore v. Ray*, 73 Mich. 385; *Atkinson v. Weidner*, 79 Id. 575.

intent to evade the statute, it then becomes a question of fact for the jury to decide, and not for the court.

Error to Wayne. (Reilly, J.) Argued November 6, 1891. Decided December 22, 1891.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion, where the points of counsel and the authorities are fully stated and reviewed.

*Julian G. Dickinson,* for appellant.

*Griffin, Warner & Hunt,* for plaintiff.

CHAMPLIN, C. J. This action is trover.

The defendant was sheriff of Wayne county, and pleaded the general issue, and gave notice that he seized the goods declared for, as sheriff of Wayne county, by virtue of certain writs of attachment issued out of the circuit court of Wayne county against Minnie Wertheimer, and that he would show that the claim to the goods set up by plaintiff was fraudulent and void against the creditors of said Minnie Wertheimer; that the mortgage, so called, under which the plaintiff claims, was made with intent to cheat and defraud her creditors; that it comprised substantially all of her property subject to execution; that it was given for the purpose of distributing her property to certain of her creditors in preference to others, and was made for the purpose of covering and concealing her property; that the plaintiff in said cause was not a *bona fide* purchaser, and is chargeable with notice of the facts and circumstances constituting the fraud perpetrated by the said Minnie Wertheimer in said transaction; that the said mortgage of said property to plaintiff did not comprise a large portion of the property of said Minnie Wertheimer, which she had concealed and covered by transfers to parties in St. Paul and Chicago,

and to the Western Knitting Company, of Detroit, and to Max Pollasky, of Detroit, with the view to defeat and defraud her creditors; that a large portion of the indebtedness mentioned in said mortgage, and which is pretended to be secured thereby, is fictitious and fraudulent as against the creditors of the said Minnie Wertheimer, notably indebtedness therein mentioned to Max Wertheimer, Morris Wertheimer, and Joseph Wertheimer.

On the 13th of December, 1889, Minnie Wertheimer, who was then engaged in business in the city of Detroit, under the name of Wertheimer Bros., executed a chattel mortgage, in which she set forth that she was justly indebted to several creditors, naming them, and the amounts owing to each, and to secure the payment of such claims, and for the purpose of indemnifying Bernard Wurzberger and Freund Bros. against liability upon certain obligations, she mortgaged certain property, fully described in such chattel mortgage, to "Carlos E. Warner, of Detroit, Mich., in trust for said parties severally," upon certain conditions as follows:

"The conditions of these presents are such that if I, the said Minnie Wertheimer, doing business as aforesaid, shall pay, or cause to be paid, to said Warner, trustee, the claims and demands aforesaid, and each and all thereof, within ten days from the date hereof, with interest thereon from the maturity of said several claims and demands, and shall keep and save harmless the said Wurzberger and the said Freund Bros. from liability as aforesaid, then this obligation shall be void, otherwise to remain in full force; and I, the said Minnie Wertheimer, agree to pay the same accordingly, and keep said Wurzberger and said Freund Bros. free and harmless from liability as aforesaid.

"But if default shall be made in the payment of said debts and demands, or any thereof, and the interest thereon, or any portion thereof, within the time or manner herein provided; or if I, said Minnie Wertheimer, shall not keep and save harmless the said Wurzberger and said Freund Bros., or either of them, from liability

as aforesaid; or if I shall sell, assign, or dispose of said goods and chattels (excepting those expressly excepted herein), or shall remove, or attempt to remove, the whole or any portion thereof from the premises aforesaid, without the written consent of said Warner, trustee, except in the usual course of trade; or if the said Warner, trustee, shall deem himself or said debts, or any of them, insecure,—then, in each such instance, the said Warner, trustee, his successors or assigns, or his or their authorized agents, are hereby expressly authorized to enter the said several premises, or any place or places where said goods and chattels, or any portion thereof, may be, and take possession thereof, subject to said exemption, and sell the same, or so much thereof as shall be necessary to pay the expenses incurred in and about the taking possession of said goods and chattels, and in the care thereof, and in and about the foreclosure of this mortgage, and the costs and charges, taxes and insurance, and services hereinafter mentioned, and the claims and demands hereinbefore mentioned, and each and all thereof, and the interest thereon, and to keep and save harmless the said Wurzberger and Freund Bros. from liability as aforesaid, at public auction, to the highest bidder, or at private sale, in bulk or parcels, at his option (anything contained in this mortgage to the contrary notwithstanding), after giving five days' notice of such sale, and the time and place of the same, by posting written or printed notice thereof in three public places in the city of Detroit and Cheboygan aforesaid.

"The said Warner, trustee, is hereby authorized to insure said goods and chattels in such sum as he may deem proper to protect his interests in this mortgage, and the moneys paid therefor may be added to and become a part of the debts herein secured, and shall be payable forthwith, and draw interest at the rate of seven per cent. per annum.

"The said Warner, trustee, is also authorized to pay all taxes that are assessed against said goods and chattels, and add the same to the debts herein secured, and to be payable forthwith, with like interest.

"From the moneys realized upon this mortgage in any manner by said Warner, trustee, he shall pay and apply the same in the following manner, to wit:

"*First.* He shall pay all of the expenses incurred by

him in and about the execution of the trust herein created.

"*Second.* He shall pay said taxes, insurance, and the expenses incurred in and about the foreclosure of this mortgage.

"*Third.* He shall pay himself a reasonable compensation for his services in executing the trusts herein created.

"*Fourth.* With the residue and remainder he shall first pay in full the following of the claims and demands hereinbefore mentioned, if sufficient there shall be, if not, to prorate the same among them, viz.: The said claims of the German American Bank, Wurzberger, Freund Bros., C. E. Bresler, Schloss Bros. & Co., S. S. Simon & Co., Jacob Brown & Co., L. Krug, Goldsmith Bros., Mrs. A. Linx, Henry Tittlebaum, Max Wertheimer, Albert Finsterwald, the Kalamazoo Overall Company, M. Rosenberg & Co., Isaac Wertheimer, and Joseph Wertheimer, guardian, and Meier & Schuknecht, and Morris Wertheimer.

"*Fifth.* And, after the payment in full of said claims, he shall pay, apply, and prorate the residue among the remainder of the parties hereinbefore first mentioned in proportion to the amount of their respective claims; the surplus, if any, to be returned to said first party."

This trust was accepted in writing by Warner on the same day.

Upon the trial in the circuit, the court, under the testimony introduced, directed a verdict for plaintiff, and left it for the jury to determine the value of the goods seized by the defendant, and the defendant brings error.

Considerable testimony was introduced upon the trial which the defendant's attorney claims had a tendency to prove that the mortgage was fraudulent in fact as a conveyance made with intent to delay and defraud creditors.

He also claims that it was a fraud in law, as being an assignment at common law, and was void under the statute (How. Stat. § 8739), which enacts that—

" All assignments, commonly called 'common-law assignments,' for the benefit of creditors, shall be void, unless the same shall be without preferences as between such

·creditors, and shall be of all the property of the assignor not exempt from execution."

The first question is whether the instrument is void, as contravening the statute above referred to.

The first objection to the instrument, upon which some reliance seems to be placed, is that it is made to Warner, who was not a creditor, in trust for the creditors named; but this does not tend in the remotest degree to give the instrument the character of a common-law assignment. The instrument must be read as a whole, and the intent gathered from its entire contents. By naming him as trustee, the conveyance did not vest in him the absolute title to the property, and place it beyond the reach of creditors. If valid, the mortgagor and subsequent lien-holders had a right of redemption; not so, if it was a common-law assignment.

This question ought to be considered as settled by the repeated decisions of this Court. It first arose in *Bagg v. Jerome*, 7 Mich. 145. There, as here, a mortgage was executed to Robert P. Toms and George Jerome, to act as trustees for the creditors named in the mortgage. It was claimed on the part of the unsecured creditors that this conveyance was in its nature and true effect an assignment in trust by an insolvent debtor of all his property for the benefit of his creditors, and should be governed by rules applicable thereto:

1. That it was a conveyance by an insolvent debtor, conscious of his utter insolvency.
2. That it was of all his property.
3. That it was in trust for the benefit of creditors other than the trustees, and to secure the payment of the debts of such other creditors.
4. That it involved a resulting trust to the grantor.

Mr. Justice MANNING, in delivering the opinion of the Court, said:

"The mortgage is an ordinary chattel mortgage with two exceptions. It is given to the defendants in error instead of the creditors of Bayless, who are mentioned, with the amount Bayless was owing each one of them, in the recital; and it contains a provision that the defendants in error 'shall not be liable in the premises for anything except their own personal fault and neglect.' These were matters proper for the jury to take into consideration, with the other evidence in the case, but we see nothing in them rendering the mortgage fraudulent."

In *Adams v. Niemann,* 46 Mich. 136, the mortgage was made to Niemann and Emil Jochen jointly, but the debts intended to be secured were not joint, but several. Niemann had two claims, one for a personal debt due to himself originally, and one covering liabilities which he had undertaken for Ernest Jochen to other creditors. Emil Jochen also had a personal claim. It was insisted that a joint mortgage could not be made to cover separate debts. Mr. Justice CAMPBELL, in delivering the opinion of the Court, said:

"We do not think there is any legal objection to such a mortgage. We have already held, at this term, that a policy of insurance may be taken jointly to secure property owned in severalty. *Castner v. Insurance Co.,* 46 Mich. 15. It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. A mortgage to a third person would be as valid as a mortgage to a creditor. The choice of a mortgagee is a matter of convenience, and there can be no wrong, and there may be some advantage, in giving to all of the secured creditors a control over the security in which all are ratably interested, and it would effectually prevent any disputes as to priority."

The question came before the Court again in *Walker v. White,* 60 Mich. 427. In that case a mortgage was executed by a member of a firm, in the firm name, to Walker, as trustee for certain creditors therein named,

including also the claim of Henry E. Porter, at $900. It was claimed in this case that the mortgage really amounted to an assignment with preferences. Mr. Justice MORSE, in delivering the opinion of the Court, said:

"The mortgage was so drawn as to specify the amount of indebtedness to each creditor specifically, and the plaintiff was by its terms made trustee for the collection and payment of the amount owing to each. There is no legal objection to such a mortgage (*Adams v. Niemann,* 46 Mich. 137); and we think each mortgagee could enforce his own claim under the mortgage, his separate debt being clearly stated. Herm. Chat. Mort. 357; *Burnett v. Pratt,* 22 Pick. 556; *Gilson v. Gilson,* 2 Allen, 115."

The validity of a mortgage securing several separate creditors in one instrument was again affirmed in *Lyon v. Ballentine,* 63 Mich. 97.

If in this case there had been successive mortgages running to the creditors, and thereby securing a preference in favor of these same creditors, no one would contend that all together they would constitute a general assignment. The effect of the instrument in this case is no different. It was said in *Walker v. White* that each creditor could enforce the mortgage for his own benefit, to the same extent as if he had a separate mortgage.

Two features are relied upon as taking this instrument out of the category of chattel mortgages, and relegating it to that of common-law assignments. One is that which I have just noticed, the mortgage being made to a trustee; and the other, that it includes all the property of the debtor.

1. Expressions have crept into some decisions to the effect that if the property is conveyed in trust the instrument is thereby changed from a chattel mortgage to an assignment. But such is not the law, unless the conveyance is absolute, and places the title of the property in

the trustee. Every chattel mortgage contains a trust to a certain extent. It necessarily creates a trust in the mortgagee as to the surplus, but this does not invalidate the mortgage. Jones, Chat. Mort. § 353. Even an assignment by a debtor to his creditor of personal property, upon trust to sell and pay his debt, with reservation to himself of the surplus, if any there be, is held to be in effect a mortgage. Jones, Chat. Mort. § 352, and cases cited in note 1. If the mortgage is to a trustee for the benefit of creditors, as was held in *Adams v. Niemann*, 46 Mich. 137, it is as valid as if made to the mortgagees. The question in such cases is this: Is the title of the property conveyed to the trustee so that it is beyond the reach of the creditors of the mortgagor? If their relation to the property is not changed by the interposition of a trustee between the creditors and the property of their debtor, so that they cannot reach the surplus, or redeem from the mortgage and become subrogated to the rights of the mortgagee, then the instrument is valid as a chattel mortgage. If the position of the unsecured creditors is not changed; if their legal rights are the same as they would be if separate mortgages were executed directly to the creditors secured,—it would be nonsense to hold that the intervention of the name of a trustee, merely for convenience, and representing the rights of such creditors as mortgagees, would destroy the validity of a mortgage, and change it to a common-law assignment. There is no baleful magic in the words, "in trust for the benefit of creditors." The law looks alone to the legal effect of the instrument, and, if the trustee is a mere agent to carry out and enforce the lien of the creditors for whom the security is given, then the instrument is a chattel mortgage, and nothing else.

In this case, what is the trust which the trustee is to

enforce for the benefit of creditors? It is simply to protect and enforce their lien upon the property. He can do so in no different manner than they could were the security given to them individually and separately. He has no greater power than they would have. The power of sale is the same, and the conditions are the same. The words, "in trust for said parties severally," might have been stricken out without detriment to the validity of the instrument. Warner would then, as he does now, stand merely in a representative capacity. The creditors assented to his so acting for them, and no fraud is perpetrated upon other creditors, and they have the same rights and remedies as they would have had if these secured creditors had been named mortgagees jointly, or had separate mortgages. This is quite different from an assignment. There the title of the property would have been conveyed, and a trustee would have stood between the unsecured creditors and the property of their debtor.

2. The instrument in this case does not purport to convey all of the debtor's property. As a matter of fact, as appears from the record before us, it did not cover all her property. But, if it had, it would not have had the effect to invalidate the security. A debtor, although insolvent, may secure a creditor for the payment of a pre-existing debt by a mortgage upon all his property, although he may have numerous other creditors who are unsecured. This doctrine has been so often and so repeatedly held by this Court that the citation of authorities in support of it would be idle. Some of them are referred to in *Sheldon v. Mann*, 85 Mich. 265. The mortgagor is not prevented from placing in the mortgage property of greater value than the amount of the debt. If every mortgage were to be declared a common-law assignment, and therefore void, because it contained all

of the debtor's property to secure some creditor or creditors over others, or because the value of the property exceeded the amount of the debts secured, I venture to say that there is not a mortgage in the State of Michigan that is not void. If the value of the property greatly exceeds the debt secured, that fact may be considered as having a bearing upon the validity of the mortgage, as having been given with intent to defeat, delay, and defraud creditors; but it would not change the character of the instrument to a common-law assignment, and be therefore void in law. Neither the fact of insolvency, nor the knowledge of the debtor's insolvency on the part of the mortgagee, will defeat or impair a mortgage security taken for an honest debt. The right of a debtor to give security, and the right of a creditor to take security, for a *bona fide* debt, cannot be denied. In fact, insolvency, or impaired credit, or inability to pay, are the only reasons for requiring or taking security for a pre-existing indebtedness, and the creditor is not required to assert or prove his ignorance of the financial situation of the debtor at the time he takes the security. If the creditor asserted that he supposed that his debtor was solvent, we know, from the common experience of mankind, that nine out of ten times the assertion would be a falsehood, and the law does not require any such miserable subterfuge to justify the exercise of a legal right. The difference between a chattel mortgage and a common-law assignment is that one is a conditional transfer of property, and the other is an absolute transfer. From one the debtor, the attaching or execution creditor, or a subsequent mortgagee has a right to redeem; from the other there is no right of redemption. In an assignment, both the title and possession of the property are vested in the assignee; in a chattel mortgage, neither, until default and foreclosure, under the decision of *Luck-*

*ing v. Wesson,* 25 Mich. 443, whatever may have been the effect of such a conveyance at common law.

It has been supposed that *Kendall v. Bishop,* 76 Mich. 634, lends support to the idea that a chattel mortgage is an assignment if its effect "is to put the entire assets, legal and equitable, into the hands of a trustee for sale and distribution." But Mr. Justice CAMPBELL in that case laid down no such doctrine. He was speaking of an instrument which transferred the legal title absolutely to a trustee for sale and distribution. The effect of that decision ought not to be open to misunderstanding, or a misconstruction, if attention is paid to what Mr. Justice CAMPBELL stated the trust contained in the instrument was. He did not make any objection upon the ground that the instrument was made to Mr. Kendall in trust, instead of to the creditors directly. It is not to be supposed that he intended to overrule what he had said in *Adams v. Niemann,* above quoted, upon that branch of the case. The trusts which he referred to were contained in the body of the instrument, and were plainly pointed out. Thus he says:

"The trustee was empowered, if he should think it for the interest of the secured creditors, to continue the manufacturing business, so as to get all material on hand ready for market, and buy new stock, goods, merchandise, and materials, long enough to dispose of the property for the best advantage; and from the proceeds he was,—

"*First,* to pay the expenses of the trust and sale and disposition of property.

"*Second,* to pay all debts to employés.

"*Third,* to pay the other secured debts in full or *pro rata.*

"*Fourth,* to pay the surplus moneys to the company.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"By this document, the trustee is expressly empowered to continue the business if he chooses, to go on and complete the manufacture of the stock, and to buy further material and goods to help on the profitable

winding up of the business, and to dispose of everything as soon as reasonably practicable. And by this grant of powers it is evident that the company, having put everything in his hands, could not possibly do anything to pay debts or redeem the mortgage, while the intermingling of new and old business would deprive execution creditors of any means of getting a sale of the residue belonging to the mortgagor, if in fact there should be, as the law and the instrument both assume there might be, one. In other words, Mr. Kendall not only took an interest by way of security for debts which by law any execution creditor would have a right to redeem, but he also took title to the surplus, with power to manage and dispose; and a trust was created for the company which would not be subject to execution as a mere equity in the proceeds, and not an ownership in the property."

It was for the reason that the instrument contained these trust powers, which operated as a transfer of the property, that Mr. Justice CAMPBELL held the instrument not to be a chattel mortgage, but an assignment in effect. He noted and relied upon the distinction which I have stated between a chattel mortgage and a common-law assignment, and he placed no reliance whatever upon the ground that the mortgage was made to Kendall in trust for the benefit of the creditors, instead of to the creditors themselves. And, having held that it was an assignment, he says:

"An assignment of all one's assets to an assignee for the benefit of creditors is within all the definitions of a general assignment. * * * *  It is the completeness of the transfer that gives it character."

He does not say that a chattel mortgage of all one's assets to a mortgagee for the benefit of certain creditors comes within all the definitions of a general assignment. Indeed, he has said to the contrary · more than once. Rollins v. Van Baalen, 56 Mich. 614; Root v. Potter, 59 Id. 506, 507.

In the Rollins case the point was directly raised by a bill in equity charging that the giving of a single mortgage to secure two creditors, and another to secure another, upon all of the debtor's property, which was worth considerably less than the securities, was in effect an assignment of such property, and was void under the statute of 1879, above quoted. Upon the question thus squarely raised, Mr. Justice CAMPBELL said, referring to the statute:

"It should be construed as it reads, as applying only to what purport to be common-law assignments. If proceedings not in that form are claimed to be fraudulent as to creditors, they must be reached in some other way, and shown to be against some other policy. The law does not avoid honest transfers or securities which are not general assignments."

*Root v. Potter* was also a proceeding in equity where all the facts came before this Court. In that case securities had been given by way of chattel mortgages which were executed on the 12th of July, 1884, and handed over to the mortgagees on the 15th, and filed on the 16th, late in the evening, and on the 17th the mortgagors executed a common-law assignment. These mortgages were attacked as being preferences, and also that they were given to hinder, delay, and defraud creditors. Under the latter claim, Judge CAMPBELL said, referring to the statute against frauds:

"Under these provisions of law, fraud was made a question of fact, and any creditor who obtained in good faith a security for an honest debt could hold it against any subsequent claim to attack it."

He then said: "The question then arises whether the transactions were illegal, as amounting to unauthorized preferences under the assignment law; and it is a question which is supposed to be an entirely new one in this State. It is, however, upon such facts as appear to exist in the record before us, within well-settled and familiar principles. There is nothing in the assignment

law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties. Retroactive operation which would divest lawfully vested rights is not in harmony with our laws. The statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done in such a time and manner as to be parts of the same transaction, and within the same disposition, whereby the debtors' entire estate is applied to the payment of all his debts. In other words, the preferences, to come within the language and the mischief of the statute, must be made in separate form to avoid the effect, which the statute would operate, of annulling them if they were included in the assignment itself. The assignment law shows no intent in the Legislature to change the existing statutes against frauds, except in the one particular of preferences; and it would be a very dangerous and unfortunate rule, if it could be legally adopted, which would annul the dealings of honest persons with those whom they do not suspect of fraudulent or unlawful designs."

In *Burnham v. Haskins*, 79 Mich. 35, a bill was filed to declare a chattel mortgage, executed contemporaneously with an assignment for the benefit of creditors, void as an illegal preference. In that case, while holding under the testimony that the chattel mortgage was executed contemporaneously with the assignment, and was part of the same transaction, we expressly stated that we have adhered strictly to the rule laid down in *Root v. Potter*, and have uniformly upheld security taken by a creditor for a *bona fide* debt, under circumstances and testimony convincing us that the creditor had no notice or knowledge that the debtor contemplated the making of a general assignment, or where the acts of making the assignment and giving the security were done in such a time and manner as not to be parts of one and the same transaction.

*Sheldon v. Mann*, 85 Mich. 265, 272, announces the correct doctrine, in these words:

"The creditor has a right to secure and to collect his claim, even if he knows that his debtor is insolvent, and that by getting his claim paid he deprives other creditors of the opportunity to secure or collect their debts. At common law, a general assignment for the benefit of creditors could be made with preferences. Nor was the debtor compelled to make an assignment. He could dispose of his property as he saw fit in the payment of his debts, if it was all applied to such purpose; and, whether it was all so applied or not, whatever portion of it was applied to the payment of a *bona fide* debt could not be touched or disturbed by other creditors. The common law put a premium upon the vigilance of the creditor, and there are not wanting those who doubt to-day the equity as well as the wisdom of the bankruptcy laws. And, under the law of this State, the debtor has the right to prefer one creditor over another by paying his debt in full or in part. This right is not affected by the debtor's insolvency, nor by the creditor's knowledge of such insolvency, nor by the fact that others may lose the entire amount of their debts credited upon the faith of the debtor's ownership of the property. As long as no assignment for the benefit of creditors is made, or the transaction does not amount in law to such an assignment, the debtor is at liberty to pay or secure any of his creditors at the expense of the others. It will be found that our statutes do not prohibit preferences unless an assignment commonly called 'common-law assignment' is made. How. Stat. § 8739; *Rollins v. Van Baalen*, 56 Mich. 614, 615. And there is no law compelling a debtor to make an assignment. As I understand the statute, if he makes such an assignment, he must do it in a certain way, and make no preferences; but, if he does not see fit to make an assignment for the benefit of his creditors, he can dispose of his property as he sees fit in the payment of his *bona fide* debts."

In that case the debtor owed debts to certain creditors, which he secured by mortgages. Of these, three were given to three separate creditors, whose claims amounted to $7,616.29, and such mortgages were intended as a prefer-

ence to those creditors, and it was the validity of these mortgages which was attacked, as being, in effect, a common-law assignment. They covered all of the debtor's personal property, and, indeed, all of his property, except his homestead and store, which were one building, and a piece of real estate called the "Rink." The homestead property and the rink were worth about $1,800, and were subject to the homestead exemption of $1,500. The mortgages in dispute were filed May 23, 1890. On the same day he executed a mortgage to his brother on his homestead and store property of $1,000, and May 29 another mortgage on the rink property, to secure a Toledo creditor, for $255.97. He gave four mortgages, which were filed May 23, 1890, and eight others, which were filed June 3 of that year. These last named mortgages secured debts in the aggregate of $2,074.69. By these mortgages he appropriated all of his property for the payment of certain specified creditors, and left out creditors entirely unsecured, holding about the same amount of credits against him. The property was seized under the first three mortgages, and produced only $5,416.66, being less than the amount of the debts secured by the first three mortgages. The facts in the case were quite fully stated and commented upon in the opinion of Mr. Justice Morse. Some of those facts, and the comments upon them, have been misapplied, and quoted and relied upon as limiting the principles of law enunciated in that case. As, for instance, it is argued that the creditor cannot take a valid security if he knows of the insolvent situation of his debtor; that his security is void if it covers all of the property of the debtor; thus overlooking the illustration and argument contained on page 274 of that opinion, and also what was said as to the knowledge of the creditor of the debtor's insolvency, upon page 273, above quoted. The opinion also states

that no assignment was intended to be made. That is a fact that must appear outside of the instrument. It could not be gathered from the language of the instruments, for in form and effect they were chattel mortgages. Immediately following, it is stated that the mortgagees—

"Obtained their security honestly, and in the usual methods of business, without any thought of the assignment law. But whether they did so or not, whatever their motive or intent may have been, so long as the securities covered no more than the amount of their just and honest claims against Mann, they have a right to the full benefit of such securities, unless the giving of these three mortgages upon the same day to separate parties can be declared, in law and in fact, to be a common-law assignment of all the debtor's property for the benefit of all his creditors. It plainly cannot be so declared or construed."

The case here under consideration falls directly within the principles laid down in *Sheldon v. Mann,* and should be ruled by it. The only difference is one that does not affect its character as a chattel mortgage, viz., instead of separate mortgages to each creditor, it names a third person as trustee; and this is permissible, as above stated, under the decisions of this State upon the subject, and was expressly held not to be fraudulent *per se* in *Bagg v. Jerome,* 7 Mich. 145.

There ought to be and is some underlying principle from which to determine whether an instrument is a chattel mortgage or a common-law assignment. If the instrument is a conveyance upon condition, given as a security for a pre-existing debt, and contains no trust in the body of the instrument whereby the property is withdrawn from the right of the mortgagor or others to redeem, who ordinarily have such right in cases of chattel mortgages, or whereby the title of the property is placed beyond the reach of execution as to any surplus,

then the instrument is not an assignment, but a chattel mortgage. But if it conveys the absolute title to a trustee for the benefit of creditors, and thus places the property and surplus beyond the reach of creditors, it is a common-law assignment. *Kendall v. Bishop* was determined upon this principle, and so were *Root v. Potter* and *Sheldon v. Mann.*

The question as to whether the instrument is a chattel mortgage or an assignment for the benefit of creditors must in all cases be determined as a question of law upon the contents of such instrument, and not upon any testimony which appears outside of such instrument; and, unless the conveyance upon its face purports to convey all of the debtor's property to secure some creditors in preference to others by an absolute title, the court is not at liberty to declare it a common-law assignment; and if facts appear outside of the instrument itself which tend to prove that the instrument was made with the intention of having the effect of a common-law assignment, or with the intention of evading the statute, then it becomes a question of fact for the jury to decide, and not for the court. *Bagg v. Jerome,* 7 Mich. 145; *Butler v. Diddy* (Iowa), 49 N. W. Rep. 995. In the latter case it was held that—

"The statute providing that no general assignment for the benefit of creditors shall be valid, unless made for the benefit of all the creditors, applies only to general assignments, and the same does not apply to other conveyances. * * * The execution of mortgages by an insolvent debtor, with the *bona fide* intention of securing particular creditors, does not operate as a general assignment for the benefit of creditors."

And upon this proposition the court cites a number of Iowa cases. The supreme court of Iowa, like our Court, has uniformly held that where mortgages were given in good faith, with the intention of securing creditors to

whom they were executed, a different intention than what the parties had could not be given them by the court. And in the case last cited it was further said:

> "Where an insolvent executes a mortgage or mortgages, not for the purpose and with the intent to secure a pre-existing indebtedness, but intending the same in fact for an assignment of all his property, *divesting himself thereby of the title to all his property,* and where the same is made in view of insolvency, such conveyances should be treated as an assignment; but where an assignment is not intended by the parties to the transaction, and the intention is only to secure a pre-existing indebtedness, in such case the instrument is a mortgage, and should be treated as such, even though all the property of the debtor is taken, and he is left insolvent, and there are other creditors who have not been secured."

This Court has more than once declared that an insolvent debtor could not be compelled to execute a common-law assignment; but if this Court can declare an instrument which upon its face is a chattel mortgage, creating only a lien upon the property, to be a common-law assignment, why is the debtor not compelled by the decision of this Court into making a common-law assignment, and that, too, against his wish and intention?

The statute of 1879 does not attempt to compass the object and purpose of the insolvent law. It does not prohibit any preference to creditors, unless the preference is made in a common-law assignment. It contains no provisions for the discharge of a debtor from all liability in case he transfers and delivers over to his assignee for the benefit of all his creditors all of his property. If the debtor makes a common-law assignment, he is still liable for any balance that may be due to his creditors after his assets are applied by his assignee to the payment of his debts *pro rata.* The creditors are not compelled to accept the terms proffered in the assignment; they may stand aloof from the assignment, and may

rely upon the liability of their debtor to pay. There is no provision for recovering preferences made on the eve of assignment. It is not either a bankrupt or insolvent law. It is of no practical use, and its only mission seems to be to beget litigation, and afford an opportunity for a creditor to obtain a preference over other creditors, by asserting and occupying the inconsistent position that the chattel mortgage given to secure a *bona fide* debt is a common-law assignment, and therefore ought to be construed as such, and void as to creditors, while he attaches or levies execution, and thus obtains securities and preferences fully as unlawful and against the policy of the law. In *Crow v. Beardsley*, 68 Mo. 435, under a similar statute, the court held that, if the instrument was attacked upon the ground that it was in effect a common-law assignment, the creditor had no occasion to resort to an attachment, because he would have had equal rights under the deed with those named therein, and could by a proper proceeding have compelled the trustee to discharge his duties under the assignment law. This Court has not been as consistent, because of its efforts to harmonize the statute and protect the rights of creditors. We have commented upon the manifest imperfections of the statute in failing to provide suitable provisions for carrying out its design, and we have held that, under certain circumstances, the creditor might proceed by attachment. *Coots v. Radford*, 47 Mich. 37; *Beard v. Clippert*, 63 Id. 719; *Wolf v. Slosson*, 83 Id. 543.

The case of *Crow v. Beardsley* clearly distinguishes between cases where the instrument is given as a security for a *bona fide* pre-existing debt and where the property is absolutely appropriated to the payment of the debts; and the court held that the instrument, although in form of a trust-deed, yet, from the fact that it contained a clause of defeasance, was a mortgage, and could not be con-

strued as an assignment, and that the statute could not be extended to include constructive assignments.

The legislature of Illinois adopted a statute, of the provisions of which ours is a substantial copy, into the statutes of that state in 1877. Numerous decisions of their supreme court upon the intent and effect of the statute have been made.

In *Preston v. Spaulding*, 120 Ill. 208 (10 N. E. Rep. 903), it was held that, after the debtors had made up their minds to make an assignment of their property for the benefit of their creditors, all conveyances, transfers, and other dispositions of their property and assets, made in view of their intended general assignment, whereby any preference was given, would, in a court of equity, be declared void, and be set aside, the same as though incorporated in the deed of assignment itself. In this case preferential payments, conveyances, and confessions of judgment to relatives and favorite creditors were made in view of an intended assignment, which almost immediately followed; and it was held that such preferences were in fraud of the statute, and that the property so transferred passed under the deed of assignment to the assignee in trust for the benefit of all the creditors. But there is nothing in that decision which supports the doctrine of constructive assignments, or that the series of preferences, transfers, and conveyances made by the insolvent in view of an early assignment would, in and of themselves, constitute an assignment.

In *Weber v. Mick*, 131 Ill. 520 (23 N. E. Rep. 646), the court, referring to the voluntary assignment act, said:

"The subject-matter of the act was limited to 'voluntary assignments,' and even if it had contained express provisions attempting to deal with or regulate 'involuntary assignments,' or any subject other than the one

embraced in the title, such provisions would have been void under section 13, art. 4, of the constitution. For the same reason it must be held that every attempt to apply the act, or any of its provisions, by construction, to any subject other than 'voluntary assignments,' must be wholly unavailing."          °

And, speaking in regard to chattel mortgages executed by a failing debtor, the court said:

"It is clear, then, that they did not constitute voluntary assignments for the benefit of creditors, within the meaning of the statute."

And they further said "that they were mere chattel mortgages, executed for the sole benefit of the mortgagees, and creating no trust in favor of any of the creditors of the mortgagor."

And in *Farwell v. Nilsson,* 133 Ill. 45 (24 N. E. Rep. 74), the supreme court of that state, adopting the opinion of Judge Moran of the appellate court, said:

"We have no involuntary assignment law, and we know of no principle of law operative in this state that limits or controls an insolvent debtor in the distribution of his assets, provided they are applied in discharge of *bona fide* debts."

And again:

"The statute relating to assignments by debtors for the benefit of creditors, prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by sale of his property. That act applies only to conveyances of property *to an assignee or trustee, in trust* to convert the same into money for the benefit of creditors of the assignor, which can now only be made under that law."

And the court further said:

"To give to this act the scope and effect here contended for would be to far exceed the legislative intent. * * * The act contemplates no such thing as a constructive assignment, and that, before the county

court gets jurisdiction, an actual assignment must be made and recorded, as required by the act."

I am satisfied, however, that the judgment should be reversed upon other grounds. The questions as to whether the indebtedness named in the mortgage · existed, the extent to which it did exist, the good faith of such indebtedness, and whether the facts and circumstances attending the transaction had any tendency to substantiate the claim that the mortgage was executed with the intent to hinder, delay, and defraud creditors, should have been submitted to the jury, and the circuit judge was in error in not so doing.

For this reason I think the judgment should be reversed, and a new trial granted.

Morse, Long, and Grant, JJ., concurred. McGrath, J., did not sit.