CHARLES MALONEY & CO. *v.* GONHUE.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—STATUTORY PROVISIONS—CONSTRUCTION—COMMON-LAW ASSIGNMENT — MEANING OF TERM.

In section 9539, 3 Comp. Laws, the words "common-law assignment for the benefit of creditors" are technical words having a well defined meaning in the law, in accordance with which, under subd. 1, § 50, 1 Comp. Laws, the statute must be construed; and, so construed, the statute applies only to general assignments in writing of substantially all the assignor's property for the benefit of creditors in which preferences are attempted.

2. SAME—PREFERENCES—ORDER FOR PAYMENT OF MONEY—EFFECT AS ASSIGNMENT.

A debtor in failing circumstances gave a creditor an order for money due the debtor, the payee agreeing orally to pay himself out of the fund and to apply the balance on the claims of certain creditors, a list of which was afterwards furnished. The fund was insufficient to pay the named creditors in full and there were other creditors not provided for and the debtor possessed a small amount of other property.   *Held*, that the order was not a "common-law assignment for the benefit of creditors" such as is contemplated by section 9539, 3 Comp. Laws, and was not, therefore, void under the statute because creating a preference.   MONTGOMERY, J., dissenting.

Error to Delta; Stone, J. Submitted November 15, 1907. (Docket No. 68.) Reargued April 7, 1908. Decided May 1, 1908.

Garnishment proceedings by Charles Maloney & Company against the public schools of Escanaba as garnishee of Leonard Gonhue. Charles H. Norton and others intervened as claimants of the fund. There was judgment for plaintiff on a verdict directed by the court, and the claimants bring error. Reversed.

*F. D. Mead*, for appellants.

*J. C. Hayden*, for appellee.

HOOKER, J. The public schools in Escanaba were indebted to Leonard Gonhue, who in turn was a debtor of the plaintiff and several other persons, among whom was a firm known as Norton Brothers. He gave to Norton Brothers a written order in the following words:

"ESCANABA, MICH., Nov. 4, 1905.
"BOARD OF EDUCATION,
                "City:
"Please pay to Norton Brothers, or order, the sum of Five Hundred and Forty-two Dollars, and charge the same to my account, and oblige.
                "LEONARD GONHUE."

The money was due upon a contract for building.

The plaintiff attempted to reach this money by garnishment proceedings, and, being permitted to recover, the defendants have appealed. The case turned in the circuit court and must here upon the question whether this order was void under the provisions of 3 Comp. Laws, § 9539, as a common-law assignment for the benefit of creditors, by reason of preference, and failure to include all of Gonhue's property.

It is manifest that, upon the face of the instrument, there is nothing to indicate that it was an assignment for the benefit of creditors, but the oral testimony shows that

the order was given to Norton Brothers with the agreement that they should collect the money due, pay first their own claim and pay the remainder to other creditors who had furnished labor and material on the building (a list of whom was to be furnished later, and which was furnished within a few days), the aggregate of which claims was $576.18, while the order was for $542.  Gonhue had other debts amounting to about $700 and other property worth from $200 to $300.

The manifest intention of Gonhue was to secure the payment of said fund to designated creditors, and it is as certain that he had no intention of making a general assignment of his property in trust for the benefit of creditors. The case would not have been essentially different had he handed the Nortons $542 in money with like instructions. If this order is to be held void for the reasons stated, it can only be done by holding an instrument or a transaction resting in parol to be a common-law assignment for the benefit of creditors, which has no semblance of such, and which was never intended to be or operate as such. Assuming, as counsel for both parties do, that the arrangement between the debtor and the Nortons was the assignment and acceptance of the title to this fund in trust for the benefit of creditors, the right of plaintiff to recover depends upon the question whether this transaction can be held to be an assignment for the benefit of creditors, within the contemplation of the legislature in its enactment of chapter 260 of the Compiled Laws. The contention of the plaintiff's counsel is substantially that section 9539 includes all conveyances of money or property to another to be applied by him in the payment of any or all debts of the assignor. To the suggestion that a "common-law assignment for the benefit of creditors" has a well-defined meaning in the law and that this statute refers to no other, it is said that the statute enlarges the meaning, if it could otherwise be held not to include all conveyances of money or property to another to be applied by him in the payment of any or

all debts.   In short, the argument is that inasmuch as it makes void common-law assignments for the benefit . of creditors which are not without preferences, as between such creditors, and which do not include all of the assignor's property subject to execution,—ergo—any assignment of property to another, to be used by him to pay one or more of the assignor's creditors, is a common-law assignment for the benefit of creditors within the meaning of the statute.

The act, as its title indicates, and its several sections show, was one designed to provide for the enforcement of assignments for the benefit of creditors, and not with the primary object of preventing preferences.   It provides (in a negative manner at least) what is necessary to an enforceable assignment, and points out the practice in enforcing such assignments.   It must be an assignment "commonly called a common-law assignment for the benefit of creditors," and not any assignment which happens to be made for the benefit of creditors.   In other words, the statute does not include all assignments which would be assignments at common law, if, perchance, they are made for the benefit of a creditor, but it limits the assignments included to a class of assignments well known in the law and referred to and described as commonly called common-law "assignments for the benefit of creditors." The mere fact that a general assignment is made void for preferences does not take it out of the class of common-law assignments to which it belonged.   It is still what is known as a common-law assignment, though now made void.

It is one of that class of assignments, and no other, then, which must be shown before the statute applies to it at all, unless the argument suggested is to be taken as conclusive of the intent of the legislature to the exclusion of all other considerations.   That it should not be so conclusive seems obvious, for the reason that such construction requires the exclusion of words in the statute which, under the best known of the general rules of construction,

is forbidden, if a construction which avoids such result is possible.  It is possible, for the argument made could as well be applied and limited to "commonly known common-law assignments for the benefit of creditors," as to the broader class, viz., all assignments having for their object the benefit of creditors.

Again, if the latter was intended, why so much care to describe them as common-law assignments, still further, as such as are "commonly called (i. e., commonly understood to be) common-law assignments for the benefit of creditors."  Section 50, subd. 1, 1 Comp. Laws, is applicable here:

" (50) SEC. 3.  In the construction of the statutes of this State, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:
"1.  All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

If a common-law assignment, etc., has a technical meaning, the words must be held to have been so used, while section 9539, by its terms, enforces the application of the first command of subd. 1 of section 50.

An assignment for the benefit of creditors, "commonly known and called" such, has consisted of a writing amounting to a conveyance of the title to all, or substantially all, of a debtor's property to another, in trust, for the purpose of closing out his business, converting his property into money, and distributing it among his creditors, to the extent of payment if possible, and, if not, proportionately, or with prescribed preferences.  That would be a general assignment for the benefit of creditors, and is the "commonly called common-law assignment for the benefit of creditors."  In Burrill on Assignments (6th Ed.), § 86, it is said:

"But the most common form of general transfer, and one the best known in the mercantile community, is a conveyance of the debtor's whole property to one or more trustees or assignees, whether creditors or strangers, for the benefit of the creditors provided for. This is the description of conveyance which the term voluntary assignment has been held to import."

The author shows that assignments for the benefit of creditors may be made directly to the respective creditors. See Burrill on Assignments (6th Ed.), § 3, and cases cited. The only reason that such are not within the letter of the statute is the limitation to be found in the words "commonly called common-law assignments," etc., and if this limitation is effective thus far, why not farther. *Wineman* v. *Manufacturing Co.*, 118 Mich. 636; *Longley, Low & Alexander* v. *Hosiery Co.*, 128 Mich. 194. Burrill says (section 3), in effect, that assignments for creditors that do not create a trust are not within the class of instruments known as assignments for creditors, thus indicating his understanding that the term has a restricted meaning. See, also, *Dias* v. *Bouchaud*, 10 Paige (N. Y.), 445, 461, where the words "voluntary assignment" are held to mean an assignment of all of the debtor's property in trust to pay debts,—thus giving a restricted meaning to the term. See, also, *U. S.* v. *Clark*, 1 Paine (U. S.), 629, 640.

"We have seen that the term assignment, in its application to real estate, implies of itself, and without any words of qualification or description, a transfer of the assignor's whole interest in the subject of assignment. See ante, p. 1. In mercantile language the term is daily used in the same broad sense. When it is said of a merchant that he has 'made an assignment,' it is understood, not that he has made a transfer of some specific article, or portion of property, to this or that particular creditor in payment or as security, but that he has made a general disposition of his property, and suspended his whole business in consequence. In the case of *United States* v. *Mott*, 1 Paine (U. S.), 188, 195, the term 'voluntary assignment' was considered to mean an assignment of all the

debtor's property.   In the Vermont case of *Mussey* v.
*Noyes*, 26 Vt. 462, 473, it was remarked by the chief
justice that an assignment which includes all one's attach-
able property, and which is intended to close up one's
business, and does so at once, is clearly a general assign-
ment.   See, also, *Bishop* v. *Hart's Trustees*, 28 Vt. 71.
An assignment intended by its maker to be general — as
shown by its language and mode of execution—by which
a firm transfers its assets, consisting of personalty alone,
to an assignee to secure all its creditors pro rata, will be
treated as a general assignment in a litigation involving
its validity, when all the parties have so treated it in their
pleadings, although it does not on its face delcare itself
and does not in terms purport to convey all the assignor's
property. *Lookout Bank* v. *Noe*, 86 Tenn. 21.   The
material and essential characteristic of a general assign-
ment is the presence of a trust and the assignee taking the
title as trustee.   *Brown* v. *Guthrie*, 110 N. Y. 435.
Whether an instrument is a general assignment depends
on its character, and not on the name which the parties
see fit to give it."   Burrill on Assignments (6th Ed.), §
87, note 1.

And Burrill says:   The character of the instrument (i.
e., one purporting to be a general assignment, etc.) is not
changed by the omission of a trifling amount of the debt-
or's property.   Burrill on Assignments (6th Ed.), § 87.
But it does not follow that every assignment of property
for the benefit of creditors, whether partial, special, or
even general, in form, would necessarily be considered as
within the class, "commonly known as 'common-law as-
signments' for the benefit of creditors."

The following authors are in point as to what constitutes
a general assignment for the benefit of creditors:

"A general assignment is not the conduct or manage-
ment of the corporate business, but its termination and
destruction.   It is not that disposition of the corporate
property which must be made from time to time in order
to carry on the corporate business, but the termination
and destruction of the power to make such disposition.
It is not the payment of the corporate debts, but ordina-
rily it is an assertion that they cannot be paid," and hence
does not hold within the implied powers of the board of

directors. *In re Bates Machine Co.*, 91 Fed. 625, 628.

"The term 'general assignment,' in its ordinary legal significance, means an assignment by a debtor transferring all of his property in general terms to an assignee in trust for all his creditors. *Royer Wheel Co.* v. *Fielding*, 101 N. Y. 504; *Tiemeyer* v. *Turnquist*, 85 N. Y. 516, 522; *Brown* v. *Guthrie*, 110 N. Y. 435; *Knapp* v. *McGowan*, 96 N. Y. 75, 87." *People* v. *Guarantee Co.*, 55 App. Div. (N. Y.) 594.

The term "general assignment" means a transfer to an assignee of all the property, or substantially all the property, of a failing or insolvent debtor for the benefit of his creditors at large, making no discrimination or preference among them. *Halsey* v. *Connell, Green & Co.*, 111 Ala. 221.

A general assignment is one by which the grantor conveys substantially all his property which is subject to legal process from the courts of the State in which he resides. *Longmire* v. *Goode*, 38 Ala. 577, 578.

A general assignment, as known to the common law, is defined by Burrill as an assignment by which all, or substantially all, the debtor's property is appropriated for the benefit of either one or more preferred creditors, or of the creditors at large, made by a debtor in declining or insolvent circumstances. *Anniston Loan & Trust Co.* v. *Ward & Co.*, 108 Ala. 85; *Bank of Opelika* v. *Kiser, Moore, Draper & Co.*, 119 Ala. 194.

It is of the very nature and essence of a general assignment for the benefit of creditors, that it should pass all property and rights of property capable of assignment or transfer, whether the title or interest of the assignor be legal or equitable. If the assignor has property or rights which are legal assets (assets which may be reached by legal process and subject to the payment of debts), and he applies them to pay or to secure particular creditors, having and retaining assets of considerable value, which are equitable, in which he has a beneficial interest, the legal title outstanding in another, in trust for him, the assignment or transfer of the legal assets is but a partial and not a general assignment. *Bank of Opelika* v. *Kiser, Moore, Draper & Co.*, 119 Ala. 194.

A general assignment, within the meaning of Pamph. Acts 1896-97, pp. 1089, 1090, entitled "An act to further define general assignments and to prevent the fraudulent disposition of property" is a voluntary transfer by a debtor

of all, or substantially all, of his property subject to the payment of debts, for the security of one or more creditors in preference to others. *Builders' & Painters' Supply Co.* v. *Lucas*, 119 Ala. 202.

A conveyance by a debtor to a trustee for distribution of the proceeds among specified creditors, reciting in the conveyance that such goods are only a part of his property, is not a general assignment for the benefit of creditors, within a credit insurance policy insuring against any loss sustained by reason of the insolvency of debtors of the insured, and defining such losses as those arising on sales by the insured persons who have made a general assignment for the benefit of their creditors; and the words "general assignment" will not be held to mean any such disposition by a debtor of his property as induces insolvency, in the ordinary meaning of the term. *Goodman* v. *Guarantee Co.*, 17 App. Div. (N. Y.) 474.

An assignment purporting to transfer all the assignor's debts and book accounts for collection, the proceeds to go first toward paying two small debts named, and the balance if any, to the assignor's wife, is not, in substance, a general assignment since it does not profess to transfer all the assignor's property nor to provide for all his debts. *Tiemeyer* v. *Turnquist*, 85 N. Y. 516, 522.

We find nothing in *Kendall* v. *Bishop*, 76 Mich. 634, or *Pettibone* v. *Byrne*, 97 Mich. 85, necessarily inconsistent with our views herein expressed, while in *Hill* v. *Mallory*, 112 Mich. 387, if open to such suggestion, did not turn upon that question, which was not decided, but was reversed for the reason that the jury were not correctly instructed on the effect of an intent to hinder, delay, or defraud creditors, which claim rested upon a different statute.

This subject has been considered in Michigan cases arising under this particular statute. Thus, in *Palmer* v. *Mason*, 42 Mich. 146, it was said that an assignment for the benefit of creditors will be presumed honest and lawful if possible, and that the instrument in question was not a general assignment. It included only a portion of the debtor's property, and named as beneficiaries only a portion of his creditors, thereby implying that general assignments only are included.

'In *Rollins* v. *Van Baalen*, 56 Mich. 610, Mr. Justice CAMPBELL authoritatively stated the rule to be that this statute "applies *only to common-law assignments*, and not to any proceedings of a different form that are claimed to be frauds as to creditors. Honest transfers and securities are not void if not in the *shape* of *general* assignments."

In *Warner* v. *Littlefield*, 89 Mich. 329, CHAMPLIN, C. J., stated that a chattel mortgage in trust is not changed by this statute from a mortgage to an assignment for the benefit of creditors, unless the conveyance is absolute and places the title of the property in the trustee, and he shows that the case of *Kendall* v. *Bishop*, 76 Mich. 634, states no such doctrine.

It was also said:

"A general assignment is an assignment of all one's assets to an assignee for the benefit of creditors. It is the completeness of the transfer that gives it character." *Warner* v. *Littlefield*, 89 Mich. 329.

In that case it is indicated that a conveyance without a clear expression of the intention that it be considered a common-law assignment cannot be considered such unless the conveyance is absolute and places the title in the trustee, and that while a chattel mortgage necessarily creates a trust, it is not such an assignment. The foregoing statement is short of saying the converse, viz., that all conveyances of an absolute title to some property to a trustee for the benefit of some creditors are such assignments, for they must still be general, and include the other elements above suggested before they can be so held.

Even *Kendall* v. *Bishop*, 76 Mich. 634, the leading authority relied upon as establishing the rule contended for by plaintiff's counsel, after holding that the instrument there in question was an assignment, says:

"An assignment of all one's assets to an assignee for the benefit of creditors is within all the definitions of a

general assignment. It is the completeness of the transfer that gives it character."

In this connection see the following later Michigan case: *National Bank of Oshkosh* v. *First Nat. Bank of Ironwood*, 100 Mich. 485. It was there said:

"Our statute prohibiting preferences in cases of assignment is in derogation of the common law. Like all statutes in derogation of the common law, this statute is to be strictly construed. It only applies when the instrument can fairly and legitimately be said to possess all of the essential elements of an assignment; and courts should not permit such essentials to be dispensed with, or substitute real or supposed equities for them, or unduly construe instruments intended for securities to be assignments. In such cases there is usually a contest for the property, which, at most, becomes a question of whether the debtor's preference can be overturned for that of some creditor, who hopes to make his claim good under an attachment, through a flaw in the instrument made to effectuate the preference of the debtor. Perhaps the equities are quite as likely to be with the creditor preferred by the debtor. At all events, there can be no legal presumption to the contrary."

See, also, *Austin* v. *First Nat. Bank*, 100 Mich. 613.

This question has been considered in two Federal cases arising in Michigan. See *Brown* v. *Furniture Co.*, 7 C. C. A. 225, and *Ontario Bank* v. *Hurst*, 43 C. C. A. 193.

This subject was exhaustively considered by Mr. Justice Day in the latter case, in a case closely resembling the present case, in which the circuit court of appeals discussed and attempted to apply the rules laid down by this court in relation to this statute. Contrary to the suggestion that "every assignment of any property in trust for the payment of preferred creditors is necessarily a common-law assignment," etc., under this statute, it was held:

"The words 'common-law assignment,' as construed by the Supreme Court of Michigan, include such general assignments as were known at the common law," and

"that the principle to be adduced is that this statute is one which operates to make void a general assignment for the benefit of creditors."

We do not quote from this case, for it is lengthy and can as well be read. It throws much light upon the subject. In our opinion, this was a lawful if not commendable appropriation of certain property (not all that the debtor had) to the payment of certain claims justly favored by the law, in lien and other statutes, and this case is in line with many others where a strenuous attempt is made to set aside a lawful preference by the debtor in favor of one which may be far less equitable, under a strained construction of a statute in derogation of the common law. See *National Bank of Oshkosh* v. *First Nat. Bank of Ironwood*, supra.

In *Warner* v. *Littlefield*, 89 Mich. 350, Chief Justice CHAMPLIN commented on this statute as follows:

"It is not either a bankrupt or insolvent law. It is of no practical use, and its only mission seems to be to beget litigation, and afford an opportunity for a creditor to obtain a preference over other creditors by asserting and occupying the inconsistent position that the chattel mortgage given to secure a bona fide debt is a common-law assignment, and therefore ought to be construed as such, and void as to creditors, while he attaches or levies execution, and thus obtains securities and preferences fully as unlawful and against the policy of the law."

See, also, *Austin* v. *First Nat. Bank*, 100 Mich. 613.

We should add that the decision of Mr. Justice Day, in which all of these and other Michigan cases were considered, was approved and followed in an opinion by Mr. Justice GRANT in a case between the same parties. See *Geer* v. *Traders' Bank*, 132 Mich. 215.

The primary object of the statute has been stated. It is not to invalidate preferences between creditors, except in a particular class of instruments, but it apparently was intended to encourage common-law assignments by failing debtors, when they provided for no discrimination, and included all property. There is nothing to indicate the

design to enlarge the scope of the term common-law assignment, so as to include any instrument or transaction which but for the statute would never have been thought to be such. Had that been the design, it could have been clearly expressed in fewer words than those used.

It is easy to see the inducement to a creditor not preferred to extend this class that he might profit by substituting his own preference for that of the debtor, and the cases heretofore presented in this court show the strenuous efforts to accomplish this, and the extent of their success and failure.

Some confusion has perhaps arisen from the fact that the character of a common-law assignment has been given, though the instrument was not intended to have such effect when made, because its clear legal effect has been to convey a title to the trustee to the exclusion of the right of creditors to reach it. Prominence has properly been given to that point, which may in proper cases justify such holding, but not where other elements of the common-law assignment are lacking. There may be other instruments besides common-law assignments for creditors which effectually cut off creditors, and this the law permits unless made with the design to hinder, delay, or defraud creditors, in which case other statutes furnish adequate relief.

*Kendall* v. *Bishop* and *Pettibone* v. *Byrne*, supra, are not, in our opinion, inconsistent with this rule, while *Hill* v. *Mallory* is practically an application of it, if it does not state it. See, also, *Webber* v. *Hayes*, 117 Mich. 260; *McMorran* v. *Moore*, 113 Mich. 101.

In *Geer* v. *Traders' Bank*, 132 Mich. 215, Mr. Justice GRANT, the writer of the opinion in *Hill* v. *Mallory*, said, with the concurrence of his associates:

"We will not attempt a review of the many cases involving conveyances made to secure creditors. If there be any apparent conflict between the decisions on this important question, it is because of the difficulty in lay-

ing down and applying a conclusive test to each case. The rule is not in doubt. The difficulty lies in applying it. We reach the same conclusion as that reached by the Federal court, and for the reasons therein stated. Whatever the decisions of other courts may be, it is the settled rule of this court that it is not a sufficient reason to set these conveyances aside that their effect is to hinder and delay other creditors, or even that the parties contemplated that other creditors might thereby be delayed in enforcing their debts. *McMorran* v. *Moore*, 113 Mich. 101; *Webber* v. *Webber*, 109 Mich. 147. The presumption is in favor of the validity of such instruments, and courts will ascribe to the parties thereto an honest, rather than an unlawful, purpose."

For the reason given, we are of the opinion that this order was not a common-law assignment for the benefit of creditors, within the statute.

The judgment is reversed, and a new trial ordered.

GRANT, C. J., and BLAIR, OSTRANDER, MOORE, CARPENTER, and McALVAY, JJ., concurred with HOOKER, J.

MONTGOMERY, J. (*dissenting*). November 6, 1905, the plaintiff obtained against the principal defendant a judgment in justice's court for $158.63 damages and costs. December 1, 1905, he caused a garnishee summons to be served upon the public schools of the city of Escanaba, returnable December 13, 1905. On the return day of the summons the public schools filed its disclosure in writing with the justice, from which it appeared that it was indebted to the defendant Leonard Gonhue in the sum of $542, and that at the time of the service of the writ of garnishment the firm of Norton Brothers held an order on the garnishee defendant from Leonard Gonhue for the sum of $542. Afterwards the notice required by law was served upon Thomas E. Norton, one of the claimants, Charles H. Norton, the other member of the partnership, being a nonresident of the State of Michigan.

The claimants appeared before the justice and the case was tried February 15, 1906. The plaintiff there declared verbally on the common counts in assumpsit, and speci-

ally for money had and received for plaintiff's use.   The
claimants pleaded the general issue verbally, and gave
notice that the moneys due Leonard Gonhue, the judg-
ment debtor, from the public schools, had been, prior to
the service of the writ of garnishment, assigned to Norton
Brothers, the claimants above named.   The case was tried
before a jury in justice's court and the plaintiff won,
whereupon the claimants appealed to the circuit court.
Leave was granted to the I. Stephenson Company, Her-
man Salinsky, Coleman Nee, Frank Bacon, A. Baum,
William Andrews, and Earl Gonhue to intervene as claim-
ants to the fund in controversy and then in the custody of
the court, and this was done, and they became therefrom
parties claimant with Norton Brothers to the fund.   These
were all the parties, with the exception of C. A. Johnson,
to secure the payment of whose claims the order was given
as herein mentioned.

On the trial of the case attorneys for both the plaintiff
and the claimants requested the court to direct a verdict.
The court directed a verdict in favor of the plaintiff.   It
appeared without dispute that on the 4th of November,
1905, the principal defendant gave an order directed to the
public schools to pay to Norton Brothers the sum of $542.
This was presented to the secretary of the board of educa-
tion before the writ of garnishment was issued or served.
The order was given for the full sum due from the board of
education to Leonard Gonhue.   While the order was ab-
solute on its face, it was given by Gonhue for the purpose of
paying the claim of Norton Brothers, amounting to $43.13,
with the intent that Norton Brothers should pay the other
claims for labor and material furnished and money bor-
rowed by Gonhue in performing a contract with the pub-
lic schools of Escanaba for repairing the Franklin school
building.   The total of these claims amounts to $576.18.

Thomas E. Norton, one of the claimants, testified that
the order on the school board was given to him on the
4th of November, 1905; that at the time Gonhue gave
him the order the arrangement was that he, Norton, was

to collect this money and pay himself and the creditors who had furnished lumber and material on the building, and Gonhue was to furnish him with a list of creditors and the amounts as soon as he could get them together. This was done about one week afterwards. The principal defendant, Gonhue, testified to the same purport. It also appeared that defendant Gonhue was indebted to parties other than those named in this agreement in the sum of about $700, viz., $158.63 to plaintiff, $260 to Carl Johnson, $258 to the Stegath Lumber Company, and $72 to Patek Brothers. The only other property which he is shown to have had was an equity in a piece of real estate worth less than $200.

It was the contention of the plaintiff, and the circuit judge so held, that the transaction between Gonhue and Norton Brothers amounted to an assignment for the benefit of creditors, and, so holding, instructed a verdict for the plaintiff. The claimants moved the court for a judgment non obstante veredicto, based upon the claim that the court was in error in holding that the transaction amounted to a common-law assignment, and upon the further claim that there is no statutory provision for trying in justice's court an issue attacking the title to property, and that for this reason the claimants were entitled to a judgment notwithstanding the verdict.

The statute, 1 Comp. Laws, § 1017, provides that after service of process upon a claimant the defendant or defendants so notified shall be considered as defendants in place and stead of the garnishee, and an issue may be formed between the plaintiff and such defendants in the same manner as provided in section relating to trials in garnishment proceedings; it being provided that the issue may be tried by the justice or a jury and such judgment shall be rendered between the parties as shall be just.

The claimants on this appeal contend that the only issue that can be tried was such an issue as might be tried if the defendant Gonhue had brought suit against the public schools of Escanaba for the recovery of this money; that

the garnishment only secured to the plaintiff the interest of Gonhue in the property subject to the valid claims upon it.   We think this is not a true construction of the statute.

The real question for determination was whether the money in the hands of the public schools of Escanaba was subject to the claims of the plaintiff as creditor. . The statute might have properly left the case to proceed against the public schools of Escanaba, and have put upon that corporation the duty of showing a valid transfer of the indebtedness from Gonhue to the present claimants.   In that proceeding of necessity the validity of the transfer would have been involved.   In place of this, the statute has provided that the claimants may be cited in and given their day in court.   The question to be determined still remains as before:   Whether there is a fund in the hands of the garnishee defendant which should be subject to be reached by defendant's creditors.

It is also suggested that, as the notice was served upon one of the two Norton brothers, the proceeding was without jurisdiction.   But it appears that this question was raised only after four trials, and it appears also that the Norton brothers both appeared in justice's court in answer to this citation.

The principal question is one which gave the circuit judge some trouble, and is not easily solved, in view of the numerous decisions in which language has been used implying rather than deciding the essentials of a common-law assignment.

The statute, 3 Comp. Laws, § 9539, provides that all assignments, commonly called common-law assignments for the benefit of creditors, shall be void unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignee not exempt from execution.

The usual definition of an assignment for the benefit of creditors is:   A voluntary transfer by a debtor of all or a

part of his property to an assignee for the payment of debts.    3 Am. & Eng. Enc. Law (2d Ed.), p. 6.

If this definition be accepted as the correct one, it would appear that the mischief aimed at by the statute would not be met if it were confined in its application, as may have been implied in some cases, to those assignments which include all the property of the debtor.    The statute above cited manifestly was intended to apply to assignments which included part of the debtor's property as well as to those which include the whole, for one of the grounds for treating such assignments as void is the failure of the debtor to include all of his property not exempt from execution.    It would hardly do to say that the provisions of the statute intended for the protection of creditors could be avoided by an intentional breach of its terms in purposely omitting from the assignment some small part of the debtor's property.

This statute has been before the court in many cases, and to attempt a review of all the decisions would be an almost endless undertaking.    It can be taken as settled, however, that a transfer in payment of an indebtedness owing to one or more creditors of property received and accepted by them as such is not within the inhibition of the statute.    Neither is a conveyance by way of mortgage, when given for the benefit of creditors, even though given to a trustee, a common-law assignment within this definition, so long as the debtor retains right of redemption, and so long as that is subject to levy by his creditors.    So far the cases are in harmony and the rule is well settled.    See, as illustrative, the cases of *Risser* v. *Hoyt*, 53 Mich., at page 210; *Longley, Low & Alexander* v. *Hosiery Co.*, 128 Mich. 194.

Where, however, by an instrument of transfer, in whatever form, a debtor transfers to a trustee his estate, to be converted into cash and distributed to his creditors, the transfer not being accepted at the time by the creditor as a satisfaction of the indebtedness, the transaction cannot be treated as a liquidation and payment of in-

debtedness of the debtor, but it has all the characteristics of an assignment for the benefit of creditors. *Kendall* v. *Bishop*, 76 Mich. 634; *Pettibone* v. *Byrne*, 97 Mich. 85; *Hill* v. *Mallory*, 112 Mich. 387.

In the latter case Mr. Justice GRANT stated the rule as follows:

"A debtor may prefer a creditor by a mortgage on all his property, or by a transfer of all his property in payment, when the value of the property is not so in excess of the debt as to raise a presumption of fraud. * * * But that is not this case. The creditors whose claims plaintiffs agreed to pay were not parties to the transaction. It was not binding upon them. There was no novation. They could not sue the plaintiffs. If they should not see fit to substitute plaintiffs as their creditors for Mr. Hill, their only remedy would be a suit at law against him, or by bill in equity to enforce the trust. The transfer was not for the sole purpose of paying the plaintiffs' claim, but also to secure the payment of five other creditors. Plaintiffs took the property burdened with these obligations. If this is not a transfer for the benefit of creditors, for what is it? It did not operate as a payment to five creditors, because they did not agree to it. If this conveyance had been made to a stranger, and it covered all the property of the debtor, in consideration that the vendee should pay certain creditors to the exclusion of others, it would amount to an assignment for the benefit of creditors, and be void under the statute. The effect of such a transaction cannot by avoided by saying that it was not intended as a common-law assignment."

This language is particularly applicable to the instant case. In this case, as in that, there was no release of the debtor by the creditors in whose interests this transfer was made. The amounts payable to them were not even named at the time the transfer was made; the list was in fact made up after the garnishment was served in the case. The cases are not in principle distinguishable.

Attention is called by appellants' counsel to the case of *Thompson* v. *Newland*, 144 Mich. 595, which is said to be controlling in all its features. An examination of that case, however, will show that the question involved in

this case appears not to have been at all considered. The claims of the defendant are stated to be, *first*, that the transfer to the plaintiff was void under section 9514, 3 Comp. Laws, which was not the section relating to common-law assignments, but that relating to conveyances in trust for the use of the person making the same. This claim was said to be entirely unfounded as the transaction was a sale whereby plaintiff acquired complete title to the property. It was next urged that the transaction was void under section 9533, 3 Comp. Laws, as made with intent to hinder, delay, and defraud creditors, but this issue, as was pointed out, was submitted to the jury and the verdict was found in plaintiff's favor. There is nothing in the opinion to indicate that the question of the validity of the transfer as affected by section 9539 was in any way considered.

The other cases which are cited in counsel's brief are sufficiently distinguished by the references here made.

The judgment should be affirmed, with costs.