MEIER v. BLAIR.

1. JUDGMENT—FINALITY—REVIEW—NEW TRIAL.

A judgment became final where no proceedings were taken to review it and no motion filed for a new trial.

2. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—COMMON LAW—DEFINITION.

A common-law assignment for the benefit of creditors consists of a writing amounting to a conveyance of the title of all, or substantially all, of a debtor's property to another, in trust, for the purpose of closing out his business, converting his property into money, and distributing it among his creditors, to the extent of payment if possible, and, if not, proportionately, or with prescribed preferences.

3. SAME—PREFERENCES—ASSIGNMENT TO ONE CREDITOR.

A debtor's assignment to one of his creditors of money due debtor from a third person may constitute a preferential assignment for the particular creditor to the exclusion of other creditors and yet not amount to a common-law assignment for the benefit of creditors which is voided by the statute (3 Comp. Laws 1929, § 15352).

4. SAME—ASSIGNMENT OF SOME PROPERTY FOR BENEFIT OF SOME CREDITORS—PREFERENCES—COMMON LAW—STATUTES—GARNISHMENT.

An assignment of some of a debtor's property for the benefit of some of his creditors would amount to a common-law assignment though voided by statute and property sought to be transferred would be subject to garnishment (3 Comp. Laws 1929, § 15352).

5. SAME—OMISSION OF NONEXEMPT ASSETS—COMPLIANCE WITH STATUTE.

Assignment of a substantial portion of principal defendant's property for the benefit of all his creditors *held*, void for failure to include all of such person's property not exempt from execution and for failure of trustees, as assignees, to comply with matters of detail mentioned in 3 Comp. Laws 1929, § 15352, especially where property assigned was pledged so that such creditors as had filed claims would have the benefit of their pledge as well as a *pro rata* share of the distribution of the trustees which would constitute a preference.

6. GARNISHMENT—THIRD PARTY CLAIMANT OF AN UNSPECIFIED AMOUNT OF GARNISHEED FUND.

Funds and assets in the hands of certain trustees under an agreement for the benefit of certain of principal defendant's creditors *held*, not subject to garnishment where plaintiff, who became apprised at the examination of a claim against such funds and assets by a third party, failed to interplead such claimant and the claim was for an unspecified amount.

7. SAME—EXAMINATION OF GARNISHEE—DISCLOSURE.

In garnishment proceedings the examination of the garnishee is, in fact, a part of the disclosure.

8. SAME—INTERPLEADING THIRD PARTY CLAIMANT—APPEAL.

In reviewing judgment for garnishees on trial of issue formed on their disclosure, the case must stand in the Supreme Court as it did at the time of such trial, hence plaintiff is in no position to

complain of failure to interplead 'a third party claimant to fund where such was not sought prior to judgment and was refused after judgment was ordered entered.

9. SAME—EXPRESS TRUST—CONSTRUCTION OF ALLOTMENT AGREE-MENT—EQUITY.

Construction of allotment agreement and adjudication of amount due third party claimant under same as to funds and assets garnisheed, which were held by garnishees under an express trust, would have to be made in a court of equity, hence the trust cannot be reached by garnishment to enforce legal claims against the *cestui que trust.*

10. SAME—THIRD PARTY CLAIMANT—TRUSTS—EQUITY.

Plaintiff in garnishment proceeding has no greater right to fund held by garnishees than does the principal defendant and where garnishees hold under an express trust for principal defendant and a third party claimant, who is seemingly making a claim contrary to express allotment agreement, resort must be had to court of equity to determine rights of various parties to the trusteed funds, such rights not being a question determinable in garnishment proceedings.

11. TRUSTS—EQUITABLE NATURE OF RELATION—GARNISHMENT.

The obligation of a trustee to the *cestui que trust* is an equitable and not a legal one and the trust cannot be reached by garnish-ment to enforce legal claims against the *cestui que trust* unless the duties of the trustee have fully terminated and the amount due to the *cestui que trust* is definite and ascertained.

12. GARNISHMENT—TRUSTS—ADJUDICATION IN EQUITY BETWEEN PRINCIPAL DEFENDANT AND THIRD PARTY CLAIMANT.

Until adjudication is had in a court of equity of the rights of a third party claimant and principal defendant to fund held by garnishees under an express trust, the amount due principal defendant remains indefinite and unascertained and not sub-ject to garnishment.

13. COSTS—APPEAL BY BOTH PARTIES.

No costs are allowed either plaintiff or garnishees where both appeal and judgment is affirmed.

Appeal from Wayne; Miller (Guy A.), J. Sub-mitted October 4, 1938. (Docket No. 1, Calendar No. 39,928.) Decided December 21, 1938.

Garnishment proceedings by Julia Meier against Frank W. Blair, principal defendant, and Hal H. Smith, H. O. Chapoton and Frank W. Merrick, trustees under an agreement, garnishee defendants. Judgment for plaintiff against garnishee defendants. Plaintiff and garnishee defendants appeal. Affirmed.

*Shapero & Shapero,* for plaintiff.

*Beaumont, Smith & Harris (C. H. McIntyre,* of counsel), for garnishee defendants.

CHANDLER, J. On January 1, 1932, Frank W. Blair was president and chairman of the Union Guardian Trust Company and a member of the bondholders' committee of the American Bond & Mortgage Company. On that day, he resigned from his offices with the trust company, and to secure the payment of any obligations to the trust company, a written agreement was reached on January 23, 1932, whereby the fees, estimated at that time to be between $150,000 and $200,000, which Blair was to receive by reason of his services on the bondholders' committee were divided between the trust company and Mr. Blair, by allocating to the trust company "that portion of said fee or payment to him as a member of said bondholders' committee of the American Bond & Mortgage Company which shall be allocated to the period of time running from October 24, 1929, to January 13, 1932, said allocation to be made on the basis of time of his service as a member of said committee and the amount of said fee so allocated to be the same proportion of the total fee as the period of time from October 24, 1929, to January 13, 1932, bears to the total period of his service on said committee." Thereafter, being in-

debted to various banks, corporations and individuals to the extent of upwards of $1,300,000, and desiring to provide for the payment of this indebtedness, Mr. Blair, on February 10, 1932, assigned assets of the par value of some $675,000 to H. O. Chapoton, Russ Jenks, Frank W. Merrick and Hal H. Smith as a "committee of trustees" upon trust for the following purposes:

(a) To pay the costs of the committee of trustees.

(b) To liquidate the property assigned.

(c) To apply the proceeds so derived to the claims of the creditors of Frank W. Blair, ratably and proportionately, and

(d) To pay the balance remaining to Frank W. Blair, his representatives and assigns, the committee being given power "to compromise any and all claims and demands against said first party, to sell or exchange on such terms and for such consideration and for such other property of any kind as said committee shall deem advisable any and all of the said property here assigned."

The property assigned was more particularly described in the instrument as being,

(a) That part of the fee Blair was to receive as a member of the "committee of the American Bond & Mortgage" not allocated to the Union Guardian Trust Company by the agreement of January 23, 1932, and

(b) An itemized list of stocks and bonds with a valuation of some $675,000 which had already been pledged to secure obligations of the assignor.

The instrument further provided:

"Said first party further agrees that should he come into possession of any other stocks or bonds than are set forth in the foregoing, either by gift,

purchase, exchange or otherwise, during the period of the existence of the trust, he will forthwith assign same to the 'committee of trustees' to be held by it for the purposes of this agreement, provided, however, that nothing herein shall require the pledge of shares needed by the first party to qualify under any law as a director of any corporation."

A supplementary instrument was executed on August 12, 1934, to remove any doubts in the minds of creditors that payments upon obligations were to be made *pro tanto* and operated only to satisfy the liability of Blair to the extent of the payment made.

Hal H. Smith acted as depository for the committee of trustees and now has $26,442.57 which was earned by Mr. Blair as a member of the committee of the American Bond & Mortgage Company, in addition to such securities as were not disposed of pursuant to the assignment agreement.

This proceeding was brought to reach these assets, for in spite of the assignment, plaintiff brought suit against Blair and after trial upon the merits recovered a judgment in the amount of $34,600. No proceedings were taken to review that judgment nor was a motion for a new trial filed, with the result that it has become final. While the principal case was pending, plaintiff instituted garnishment actions against H. O. Chapoton, Frank W. Merrick and Hal H. Smith (Russ S. Jenks having died), as garnishee defendants, on May 24, 1935, October 26, 1935, and February 24, 1936. Thereafter on May 3, 1937, additional garnishment proceedings after judgment were instituted against Smith alone as garnishee defendant. The disclosure filed to all these suits disclaimed possession of any assets belonging to Frank W. Blair and the issue so raised and the determination thereof resulted in this appeal.

The lower court held that the assignment of Mr. Blair's assets to H. O. Chapoton, Russ S. Jenks, Frank W. Merrick and Hal H. Smith, as a committee of trustees, to be liquidated and applied upon the indebtedness of the assignor constituted a general assignment for the benefit of creditors, which was void for failing to conform to the provisions of 3 Comp. Laws 1929, § 15352 (Stat. Ann. § 27.2417); that the garnishee defendants were liable to the plaintiff for the properties held by them other than money received from the committee of the American Bond & Mortgage Company; that such money could not be garnisheed because there was no definite, existing, certain amount which could be said to be in the hands of the garnishee defendants which belonged either to Mr. Blair or his creditors; that garnishment proceedings cannot be sustained as far as this sum of money is concerned because the rights of the Union Guardian Trust Company were involved and they were not made a party to the proceedings; and that equity alone had jurisdiction to pass upon the questions herein involved inasmuch as an express trust existed which must be construed. From this disposition of the case both parties appeal.

The statute cited (3 Comp. Laws 1929, § 15352 [Stat. Ann. § 27.2417]) provides in part that,

"All assignments, commonly called common-law assignments for the benefit of creditors, shall be void unless the same shall be without preferences as between such creditors and shall be of all the property of the assignor not exempt from execution, and the instrument of assignment or a duplicate thereof, and inventory of the assigned property, a list of creditors of the assignors and a bond for the faithful performance of the trust by the assignee

shall be filed in the office of the clerk of the circuit court.''

Garnishee defendants argue that the assignment of February 10, 1932, as supplemented by the agreement of August 12, 1934, constituted a special assignment for the benefit of only certain of Mr. Blair's creditors and therefore was not subject to the terms of the above statute or to garnishment. What is meant by the phrase ''common-law assignment for the benefit of creditors'' is discussed at length in the case of *Charles Maloney & Co.* v. *Gonhue,* 152 Mich. 325, where it is said:

''An assignment for the benefit of creditors 'commonly known and called' such, has consisted of a writing amounting to a conveyance of the title to all, or substantially all, of a debtor's property to another, in trust, for the purpose of closing out his business, converting his property into money, and distributing it among his creditors, to the extent of payment if possible, and, if not, proportionately, or with prescribed preferences. That would be a general assignment for the benefit of creditors, and is the 'commonly called common-law assignment for the benefit of creditors.' ''

In that case it appeared that the public schools in Escanaba were indebted to Gonhue, who in turn was the debtor of plaintiff and others. Gonhue gave a written order to the school directing it to pay one of his creditors the sum the school owed him. The court held that this did not constitute a common-law assignment which was void for failure to comply with statutory requirements, and that plaintiff could not garnishee the money so assigned. Defendants rely strongly upon this case, but it is so clearly in the category of cases where a particular creditor has been preferred to the exclusion of others that it can-

not be considered as controlling in the instant suit. Nor does it follow, as defendants apparently contend, that because some of the assignor's property is omitted, the instrument constitutes a specific assignment for the benefit of particular creditors. So too, "the mere fact that a general assignment is made void for preferences does not take it out of the class of common-law assignments to which it belonged. It is still what is known as a common-law assignment, though now made void." *Charles Maloney & Co.* v. *Gonhue, supra.*

In *Smith* v. *Mitchell,* 12 Mich. 180, it was held that the trial court was in error in not charging that a purported general assignment was void if it did not fairly *bona fide* assign all of the assignor's property liable for the payment of debts, and that the assignee could not maintain trover as against one who stood in the place of a creditor.

In *Price* v. *Haynes,* 37 Mich. 487, the question presented was whether plaintiff had shown in himself, as against creditors of his assignor, a title to goods which he claimed were transferred to him by a general assignment for the benefit of the creditors of one Congdon. The court held that the assignment did not include the assignor's real property which was liable for the payment of his debts, and therefore it was void precluding plaintiff from maintaining an action in replevin.

Where the garnishee defendant argued that he had title to the property in question under a common-law assignment for the benefit of creditors, the court refused to accept the argument because the parties never attempted to comply with the terms of the statute, pointing out that the bill of sale did not include all the property of the principal defendant as "he had a horse that was not included in the

transfer." *Youghiogheny & Ohio Coal Co.* v. *Anderson,* 186 Mich. 349. See, also, *Hill* v. *Mallory,* 112 Mich. 387.

One is forced to conclude that the failure of Mr. Blair to include all his property in the assignment to his committee of trustees does not mean that the character of the transaction is changed if in fact it was a common-law assignment for the benefit of creditors. Rather such an assignment is made void by statutory enactment, and the property sought to be transferred is subject to garnishment.

That this result follows is clearly demonstrated by the adjudicated cases. Thus, where the assignor fraudulently withholds a true inventory of goods which he seeks to convey to a trustee under a general assignment for the benefit of creditors, the fraud perpetrated vitiates the transaction and the assignee may be garnisheed by the creditors of the assignor. *Farrington* v. *Sexton,* 43 Mich. 454.

In *Beard* v. *Clippert,* 63 Mich. 716, where a general assignment for the benefit of creditors was held void for failure to file the proper bond within 10 days from the time the assignment was made, the court indicated the remedies available to a creditor in these words:

"A creditor of the assignors after the time given by the statute to file the bond has expired, has two remedies open to him. He may proceed upon the equity side of the court, to have the trust carried out through the intervention of a receiver and the supervisory power of a court of chancery, or he may, if no other creditor invokes the aid of chancery, proceed to enforce his claim against the property of his debtor by levy of attachment, or execution, as if the attempted assignment has not been made."

In *Baker* v. *Parkhurst,* 119 Mich. 542, it was held that garnishment would lie where the garnishee

fraudulently withheld a chattel mortgage upon the property of the principal defendant from record, and represented to mercantile firms that the principal defendant had a sound credit standing, upon the strength of which plaintiff extended credit. The proceeds secured by foreclosure of the aforementioned chattel mortgage were subjected to the writ. See, also, *Heineman* v. *Schloss,* 83 Mich. 153; *McCuaig* v. *City Savings Bank,* 111 Mich. 356.

The record shows that Mr. Blair resigned from his positions with the Union Guardian Trust Company but a month before this assignment was made; he sought to secure and liquidate his debts with that company by assigning to them a proportionate share of his earnings as a member of the bondholders' committee of the American Bond & Mortgage Company; a substantial portion of his wealth was assigned to a committee of trustees to be converted into money and applied upon his large indebtedness, and the claim of the defendants that only those creditors who accepted the provisions of the assignment were to be favored is not supported by the testimony of Mr. Smith who gave any creditor who filed a claim notice that it had been received and allowed, or by the express direction to the committee of trustees "to pay and discharge in full * * * the claims of all the creditors of said first party, ratably and in proportion." One concludes that this was an attempt to make a common-law assignment for the benefit of the creditors of Mr. Blair, which fails because all the debtor's property not exempt from execution was not included and because matters of detail mentioned in 3 Comp. Laws 1929, § 15352 were not followed. And the property assigned having already been pledged, such creditors would have the benefit of their pledge as well as a *pro rata* share of

the distribution of the trustees which would constitute a preference.

The garnishee defendants agree that if the assignment is void the judgment of the lower court should be affirmed, that is, the property held by them aside from money is to be subject to the garnishment writ. Plaintiff, however, argues that since the money in the hands of the committee may be definitely apportioned between Mr. Blair and the Union Guardian Trust Company, the former's share should also be subject to the writ.

When the assignment of February 10, 1932, was made, Mr. Blair had been on the bondholders' committee of the American Bond & Mortgage Company for some two years, and the agreement of January 23, 1932, whereby he allocated to the Union Guardian Trust Company that proportion of the total fee as the period of time from October 24, 1929, to January 13, 1932, bears to the total period of his service on said committee was made with the thought that the affairs of the committee would be wound up within the next two years, and that both parties would receive a like amount. However, in 1933, when bank difficulties arose, it became apparent that the work of the bondholders' committee would go on indefinitely, and when $5,000 was turned over to the committee of trustees by Mr. Blair as part of his fees for work done on the bondholders' committee, the Union Guardian Trust Company insisted that they were entitled to the first fees and demanded the $5,000 check. Mr. Smith testified:

"In the spring of 1934 the Union Guardian Trust Company advanced its claim that under the assignment it did not have to wait to determine its *pro rata* part of the fees recovered from the American Bond & Mortgage Company, but that the committee

was liable to turn over to it the first money received up to an amount which they did not specify but it would be in their opinion a reasonable charge for Mr. Blair's services on that committee during the time he served on the committee, and up to the time he resigned as an officer of the trust company.''

Thereafter, fearing double liability, the American Bond & Mortgage Company committee executed an agreement with Mr. Smith and Mr. Blair whereby money earned by Mr. Blair for work done on the bond committee was turned over to Mr. Smith in trust, with power to invest the same in securities evidencing indebtedness issued by the United States, the income therefrom to be added to the principal fund or disbursed in the discretion of the trustee in accordance with the trust agreement of February 10, 1932. Mr. Smith was to hold such securities until a court of competent jurisdiction determined to whom they were payable, or until all parties involved stipulated the manner in which to dispose of these assets. Mr. Smith received $20,640.98 under the terms of this trust, and combined with the $5,000 received from Mr. Blair, plus increments derived from investments, he now has $26,442.57 of which plaintiff alleges Mr. Blair is entitled to $18,753.46 in accordance with the apportionment agreement reached by Mr. Blair and the Union Guardian Trust Company. Plaintiff arrives at this figure by means of the following formula:

$$\frac{1978 \ (1)}{2789 \ (2)} \times \$26,442.57(3) = \$18,753.46(4)$$

(1) Total days from January 13, 1932 to June 13, 1937.
(2) Total days from October 24, 1929 to June 13, 1937.
(3) Money in the hands of the garnishee defendants on June 13, 1937.
(4) Minimum share Blair's creditors are entitled to in any event as of June 13, 1937.

The difficulty with the argument as presented is that it does not recognize that the Union Guardian Trust Company is not claiming under the instrument upon which this formula is based. Instead, as Mr. Smith testified, the company seeks the "first money received up to an amount which they did not specify but it would be in their opinion a reasonable charge." Furthermore, the trust company was not made a party to these proceedings in spite of the fact that its interest became apparent upon the hearing of the garnishment issue. Plaintiff contends that the absence of the company as a party is not fatal to the proceedings, since the garnishee defendants elected not to have them a party by failing to mention their claim in their disclosures. However, the examination is in fact a part of the disclosure, and upon hearing the testimony of Mr. Smith, plaintiff was apprised of the Union Guardian Trust Company's claim and should have interpleaded it at that time.

Thus, in *Markham* v. *Gehan*, 42 Mich. 74, it was said:

"It appears in the record beyond any controversy that the demand owing by defendants, and which the plaintiff seeks to recover from them as garnishees, was due not to the principal defendant alone, but to him and another person with whom he was joint contractor for building a church. There was therefore no ground for a recovery, and the judgment in favor of defendants must be affirmed with costs."

In *Marx* v. *Wayne Circuit Judge*, 119 Mich. 19, the garnishee's disclosure denied that it had a fund belonging to Herman Marx, but its subsequent examination under the statute disclosed the fact that

it had a fund deposited by him in the name of himself and his brother as copartners. The court ordered them to be interpleaded on application of the plaintiff's attorney. On appeal this court refused an application for mandamus to set aside the issue thus framed, saying:

"We are of the opinion that it is more reasonable to hold that the right of the plaintiff to try the title to this fund under the method pointed out by the statute (2 How. § 8085) should extend to any case where the disclosure and examination show a disputed claim to a fund in the garnishee's possession, which the plaintiff claims to be the property of the principal defendant, or owing to him; and that there is no reason for limiting the application of the statute to cases where the fact appears in the disclosure, so called. The examination is in fact a part of the garnishee's disclosure."

Since the case was submitted to the court below without taking advantage of the statute at the trial, or attempting to take advantage of it until judgment was entered when the court refused to allow a motion to interplead the Union Guardian Trust Company, plaintiff cannot now complain. *Kennedy* v. *McLellan,* 76 Mich. 598.

There is still another difficulty with plaintiff's position. Since the Union Guardian Trust Company is now taking a position which seems to be contrary to what a strict reading of the allotment agreement would warrant, and in view of the fact that the money is being held under an express trust, resort would have to be made to equity for a construction of the instrument and a determination of the rights of the parties thereunder. Plaintiff's counsel may be right in their interpretation of this

instrument, but ultimate adjudication must be made by a court of equity. Plaintiff can have no greater rights in this fund than has Mr. Blair.

"It is the uniform holding of the courts that the obligation of a trustee to the *cestui que trust* is an equitable and not a legal obligation, and that the trust cannot be reached by garnishment to enforce legal claims against the *cestui que trust.*   *   *   *

"This rule obtains, unless the duties of the trustee have fully terminated and the amount due to the *cestui que trust* is definite and ascertained, and nothing remains except the duty of the trustee to turn over and deliver a definite sum to the *cestui que trust." Darling* v. *Dodge,* 200 Iowa, 1303 (206 N. W. 266).

Until equity adjudicates the rights of the Union Guardian Trust Company and Mr. Blair in the sum held by Mr. Smith, the amount due Mr. Blair remains indefinite and unascertained thus precluding any attempt to subject the same to garnishment.

The judgment is affirmed. None of the appealing parties having prevailed, no costs will be allowed.

SHARPE, POTTER, NORTH, and MCALLISTER, JJ., concurred with CHANDLER, J. WIEST, C. J., concurred in the result. BUTZEL and BUSHNELL, JJ., did not sit.